Simon, J.
delivered the opinion of the court.
Plaintiff represents that the defendants, Ooulon and A. Thomasson, are ' indebted to him in several sums of money, amounting together to $5859 75, [357] with interest, on certain notes dated 16th December, 1836,14th July and 15th December, 1838. That by a notarial act passed on the 19th of March, 1830, Alexander Thomasson, who was possessed as owner of a certain half lot of* ground situated in the town of Thibodeauxville, measuring 70 feet front by 140 deep, <&c., pretended to sell the said lot to Mary A. Thomasson and Eug'énie Thomasson, his sisters, for the price of $2500; that by another public act passed before the same notary on the 5th July, 1831, Eugenie Thomasson, pretended to sell the undivided half of the said half lot to Mary A. Thomasson, who, afterwards, by another public act passed in Mew Orleans on the 27th February, 1834, sold the whole of the same to St. Clair Thomasson, for the price 'of $4000. He further states that by private act dated the 22d of June, 1831, recorded on the 6th of July, one Wm. A. Schaeffer sold a mulatto woman named Milly to Mary A. Thomasson, which said slave though apparently sold to the said Mary, was in truth sold to Alexander Thomasson; and that she was falsely named as the purchaser thereof with the intent to shelter the slave from the pursuit of Alexander’s creditors. He also alleges that the said Mary, Eugénie and St. Clair Thomasson have suffered the said Alexander to remain in the corporeal possession of the said lot and slave ; that he has always continued to act as the owner of the same; that he did so at the time when the obligations sued on were contracted by him; that he has continued to do so to the time of the institution of this suit, and that the said pretended vendees have never exercised any right of any kind to the said property. He attacks all the said acts as false, fraudulent and simulated, adds that Alexander Thomasson has no other property to satisfy the debt for which he is sued; and concludes by praying for judgment against the two debtors for the amount claimed, and further, prays that Mary A. Thomasson and her husband, and St. Clair Thomasson be made parties to this suit, and that the acts of sale above recited be adjudged to be false and simu[358] lated and made in fraud of creditors; that the same be avoided as to their effects on him, the plaintiff, and that the lot of ground, slave Milly and her issue, be applied to the payment of the amount of the debt sued for in principal, interest and costs. Alexander Thomasson answered and pleaded the general issue; Ooulon confessed judgment, and judgment was first regularly *219 rendered against them in favor of the plaintiff for the whole amount of his claim.
The other defendants, St. Clair Thomasson and Mary A. Thomasson, appeared and filed a peremptory exception to the plaintiff’s action, averring; that according to his own showing, plaintiff cannot maintain his action, because the different contracts of sale referred to in his petition and sought to be avoided and annulled, are, according to the allegations therein contained, of a date long anterior to the accruing of the debt declared on against their co-defendant, Alexander Thomasson. The district court sustained the exception and dismissed the suit; from which judgment plaintiff appealed.
The peremptory exception on which the judge a quo dismissed this action, appears to be predicated on the art. 1988 of the La. Code, which says: “ no creditor can by the action given by this section (revocatory action) sue individually to annul any contract made before the time Ms debt accrued,” and it has been strenuously contended before us, that no exception can bo made to this general rule, as the law which is worded in general terms, does not make any. We understand the action given by the section of the Code to which the article 1988 refers, to be that allowed to creditors for the purpose of avoiding contracts appmently complete and regularly carried into effect by their debtors, and so far clothed with the formalities of the law and semblance of good faith and truth that they must necessarily be presumed to be valid and lawfully made. In such cases, the burden of proof is thrown upon the creditors who attack those contracts as made in fraud of their rights under the different rules and restrictions contained in the section of the Code above alluded to. But when, as in the present case, the allegations on which [859] the action is based, show that the debtor has never ceased to be in possession of the objects by him apparently sold, that no real delivery has ever been made to his vendees, we think that the rule established by the article 1988, does not apply, and that the creditor who has contracted under the faith of his debtor’s being the owner of the property which he is in possession of at the time of the contract, ought to be allowed to seek his remedy under some other provisions of the law.
Between the parties to an act of sale, the contract is perfect as soon as there exists an agreement for the object sold, and for the price thereof, although the object has not yet been delivered, nor the payment made. La. Code, art. 2431. But in all cases where the thing sold remains in the possession of the seller, there is reason to presume that the sale is simulated; and, with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale. La. Code, art. 2456. This rule is still more explicitly established in art. 1915, in these words : “ In cases, however, of contracts, which purport to transfer immovable property, if he who transfers it is suffered by the obligee to remain in corporeal possession, for a longer time than is reasonably required to deliver the actual possession, and to act as owner, to the injury of a third person, who may afterwards contract with him, or may acquire rights upon his property as creditor, it will be considered as a mark of fraud, and will throw the burden of proving that the contract was made bona fide upon him to *220 whom the property was transferred by the first contract, in any controversy with the creditors of the obligor, or persons acquiring bona fide intermediate rights by contract with him.” Here, then, the law has specially provided for a case like the present; it has foreseen, that there may be cases in which an individual might contract with another, or acquire rights upon his property as creditor, although he may have previously transferred his immovable [360] property to another person; and that by being suffered to continue to remain in the corporeal possession of it, this possession may cause an injury to a third person, as it may be used, perhaps, as an inducement upon others to deal with one who possesses, and is apparently the owner of valuable property. "Were we to adhere strictly and exclusively to the letter of the article 1988, and thereby to sanction the doctrine urged upon us by tho defendants’ counsel, which doctrine would be mischievous in its effect and conse • quences, our laws would not only become vain and nugatory, but would be used as a shield, under the protection of which the grossest and most flagrant frauds would be committed ! How easy would it be for a contriving and fraudulent 'debtor to make a written and simulated contract of sale, in collusion with another, at a time when no suspicion can exist, so as to enable Mm afterwards, by remaining in the possession, and apparently the owner of the property, to defraud subsequent bona fide creditors, who, relying on the principle of law, that the property of a debtor is liable for all the consequences attending the non-performance of his obligations, would be without remedy as any attempt on their part to avoid such fraudulent transfers, would be successfully opposed by the plea, that the act of sale is of a date anterior to the accruing of the debts! This our law has never had in contemplation; the remedy must be allowed where the right exists; and in resuming, we do not hesitate to say, that when the thing sold remains in the corporeal possession of the seller, who is suffered to act as owner, to the injury of a third person, the rule, that the delivery of immovables always accompanies the public act which transfers the property, ceases to be applicable; that in such case, the sale is presumed to be simulated and fraudulent; that creditors may attack it as such, without any limitation, as long as the corporeal possession continues, although the written evidence of the transfer may have been passed before the time the debt accrued; and that in an action brought to annul such fraudulent contracts, the burden of proving that it was made bona fide, being [361] thrown upon him to whom the property was transferred, it is liis duty to establish its reality.
With this view of the question, we think that the district judge erred in sustaining the exception, and the case must be remanded for further proceedings.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed; that the peremptory exception filed by the defendants and appellees be overruled, and that this case be remanded to the lower court, for further proceedings according to law; said appellees paying costs in this court.