## EASTMAN v. HARRIS.

Hearsay evidence, admitted without exception, cannot be objected to afterwards.

To enable a party to become the owner of a thing which he finds, it is necessary that the former owner should have completely relinquished or abandoned it. C. C. 3384; 3387:

Where a raft of logs is accidentally stranded upon the land of another; and the proprietor of the land, though notified of the intention of the owner of the raft not to abandon it, cuts up the logs into firewood and sells them for a price exceeding, after deducting the cost of cutting them up, the value of the logs in their original condition, being a possessor in bad faith, and having thus put it out of his power to restore the thing in its enhanced condition upon being compensated for his labor, he will be responsible for the enhanced value of the timber when cut up for fire-wood, after deducting the cost of cutting it up: Such a possessor cannot be permitted to profit by his own wrong. C. C. 517, 518; 524, 2292. *Per Curiam:* As the plaintiff has asked for an affirmance of the judgment, which allowed him the value of the wood in the form of firewood, after deducting the cost of converting the logs into that form, it is unnecessary to decide whether a possessor in bad faith, under such circumstances, is entitled to compensation for the labor of converting the wood into a more valuable form, which is, at best, questionable.

APPEAL from the District Court of Madison, *Selby*, J. *H. W. Dunlap, Thomas* and *Snyder*, for the plaintiff. *Short* and *Parham*, for the appellant: The judgment of the court *(Rost, J.* absent,) was pronounced by

SLIDELL, J. The plaintiff, who brought his action in December, 1847, alleges that, in the summer of 1847, a raft which belonged to him, and was in course of transportation down the Mississippi, was stranded upon the land of the defendant, and was afterwards appropriated by the defendant to his own use. Damages were claimed to the amount of $490. The defendant pleaded the general issue. There was judgment in favor of the plaintiff for $300, and the defendant has appealed.

The first point made by the defendant is, that the plaintiff has not proved his ownership of the raft. A portion of the evidence upon which the question of ownership turns, would have probably been inadmissible as being hearsay; but no exception was taken to it. It satisfied the mind of the district judge; and his conclusion on this question not being manifestly erroneous, we are not at liberty to disturb it.

The next point presented is, that the damages were excessive. For its proper consideration it is necessary to notice the facts of the case, and then examine the principles of law, which, under such circumstances, control the rights of the owner, and the liability of the party into whose hands the property has fallen.

It appears that during the high water, in April, 1847, one *Avery* was in charge of two rafts, and was floating them down the Mississippi, when they were accidentally stranded upon the defendant's land. The plaintiff's raft being inside, *Avery* cut loose the other which floated on. He left a man with the stranded

25

raft, directing him to take care of it, and deliver it to the plaintiff. The agent remained, and kept possession of it for some time; but was told by the defendant that, neither he, nor any one else, should have it, until the proper owner came for it. The raft remained aground for five or six months, when the defendant cut up the logs into fuel, and sold it. He stated to a witness, that no one had called to claime it; but that he expected to have some difficulty about it. It appears from the evidence, that the logs were about ninety in number, and were worth, in the situation in which they were, about one dollar per log. That the wood cut up into fuel was worth, according to the defendant's own estimate, $3 per cord. The labor of cutting the logs into fuel and putting it on the bank of the river, in readiness for sale to steamboats, is proved to have been worth about eighty-one conts per cord. Each log would give about one cord and a half of fuel. A calculation made upon these data will show that the amount of damages given by the district judge is about the value of the fuel, less the expense of converting the logs into that form. If the plaintiff was only entitled to recover the value of the logs as they lay aground, the damages given by the district judge are excessive; but if he was entitled to the enhanced value of the logs, deducting the cost of their conversion into fuel, the judgment cannot be deemed excessive, and ought not to be disturbed.

Among the modes of acquiring property is occupancy. He who finds a thing which is abandoned, that is, which its owner has left, with the intention not to keep it any longer, becomes master of it, in the same manner as if it had never belonged to any body. Civil Code, 3384. But it is requisite that the former owner should have completely relinquished the chattel, before a perfect title will accrue to the finder; and there is a class of cases in which the presumption of law forbids the supposition of an intention to abandon. "We must not reckon," says the Code, "in the number of things relinquished, those which one has lost, nor that which is thrown into the sea in a danger of shipwreck to save the vessel, nor those which are lost in a shipwreck. For although the owners of these things lose the possession of them, yet they retain the property and the right to recover them." C. C. art. 3387.

In the present case the plaintiff has not only the benefit of the legal presumption, but has also shown by positive acts the intention not to abandon, and the communication of this inention at the time to the defendant.

. The article just cited also shows, to a certain extent, the defendant's liability : "Those who find things of this kind cannot make themselves masters of them; but are obliged to restore them to their lawful owners, in the manner provided for by the special laws made on the subject." The rule is taken from the roman law, where the very case before us is an illustration. Si ratis delata sit vi fluminis in agrum alterius, posse cum conveniri ad exhibendum.

But is the owner entitled to take back the thing, when it has been converted by the industry of the finder or taken into another and enhanced form? Even where a person in good faith has employed materials which did not belong to him in making another article, the owner of the materials has a right to claim the thing made out of them on reimbursing the price of the workmanship. There is an exception, where the workmanship is so important that it greatly surpasses the value of · the materials, as in the case of a statute which the statuary has made from a block of marble belonging to another. See Civil Code, 517, 518.

But if such would be the rights of the owner against a possessor in good faith, unquestionably the possessor in bad faith cannot complain if the thing is taken

EASTMAN<br>v.<br>HARRIS.

from him upon reimbursing to him the price of his labor. Such a possessor cannot be permitted to *profit* by his own wrong. See Civil Code, 524, 2292.

(Whatever in a mere moral point of view may be the defendant's freedom from blame, it is clear that, in a legal aspect, he was a possessor in bad faith.) Under the stern rule of the roman law he who finds a thing that is lost, if he knows, or may know, to whom it belongs, and keeps it without an intention to restore it, or without endeavoring to discover the owner, is considered as committing a theft. Under our milder systems he loses the advantages which the law accords to good faith.

As the defendant has, by his own act, put it out of his power to restore the thing in its enhanced condition, upon being compensated for his labor, he cannot be relieved from a judgment which condemns him to pay an equivalent amount.

As the plaintiff has asked an affirmance of the judgment, it is not necessary to decide whether a possessor in bad faith, under such circumstances, is entitled to compensation for the labors bestowed upon it, and by which it has been converted into a more valuable form. But we may remark that it is at best questionable. The policy of the civil law was to sanctify and uphold the right of property by discouraging and punishing wrong doers; and we find a learned court of common law, in a case very like the present, applauding the wisdom of the civil law, and citing it as authority. We refer to the case of *Botts* v. *Lee*, 5 Johnson, 349, where a party had trespassed upon another's land, cut down the timber, and converted it into shingles. This was held not to change the title to the property, and the trespasser, it would seem, was not considered as having a right to remuneration for making them. In *Brown* v. *Sax*, 7 Cowen, 95, where logs had been cut on the plaintiff's land, drawn to the defendant's mill, and converted into boards, the judge charged that the measure of damages would be the the value of the boards, without reference to the price of the defendant's labor; and this ruling was affirmed by the Supreme Court. There was a difference of opinion as to the technical question whether, in the particular form of action (trover) the damages should be confined to the value of the thing taken, but none as to the principle in cases of a wilful and tortious taking. See also *Baker* v. *Wheeler*, 8 Wendell, 505. *Judgment affirmed.*