UNITED STATES *v.* PERKINS *et al.*

*(Circuit Court, W. D. Louisiana. January 5, 1891.)*

1. PUBLIC LANDS—CUTTING TIMBER—SUBSEQUENT PURCHASE.
    Where a homesteader, who has never had possession of the land included in his homestead claim, and whose entry has been canceled, buys the land from the government, such purchase does not pass title to timber which he had cut from the land before his purchase, and after he had learned that his homestead entry was invalid.

2. SAME—MEASURE OF DAMAGES.
    In an action by the United States for the value of timber bought by defendant from a trespasser who had knowingly cut it from the public land, the measure of damages is the value of the timber at the time of the purchase.

On Writ of Error from District Court.

*M. C. Elsner*, U. S. Atty.

*J. L. Bradford*, for defendants in error.

PARDEE, J.  December 17, 1885, the United States brought suit in the district court of this district against Allen J. Perkins and Charles H. Miller. composing the commercial firm of Perkins & Miller, claiming that they were indebted to the United States *in solido* in the sum of $2,328, with legal interest from judicial demand, for the manufactured value of a lot of pine timber that was cut by one Reeves and one Perkins, trespassers, in the fall and winter of the year 1884, on the vacant lands of the United States, and by said trespassers sold and delivered to the defendants, said defendants well knowing at the time of said sale and delivery that the said timber had been unlawfully cut and removed from vacant lands of the United States; and that said timber, which so came to the hands of said defendants, was sold and converted to the uses of said defendants.  Defendants answered with a general denial and the plea of prescription of one year.  The cause came on for trial, and the jury found the following special verdict:

"We find as a fact specially that John T. Reeves went upon the W. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, sec. 30, T. 8 S., R. 7 W., prior to 1877.  Subsequently he made homestead entry of the N. E. $\frac{1}{4}$, sec. 25, T. 8 S., R. 8 W., supposing it to be the land upon which he was then and had been previously living; that in 1879 he discovered that the land upon which he was actually residing was not included in his said entry, and after learning this fact he cut eight hundred logs from the land included in said homestead entry, and sold same to Perkins & Miller, worth, as trees, fifty cents, and, as logs, five dollars ($5.00) per thousand, averaging two hundred and seventy feet per log."

Thereupon, it appears, the following agreed statement of facts was entered into, viz.:

"In addition to the facts found by the special verdict of the jury in the above-entitled cause, it is agreed that the evidence before the jury in said suit established the following facts, viz.: 'That John T. Reeves, on March 9, 1877, at the United States land-office, New Orleans, Louisiana, made his homestead entry for the land described in plaintiff's petition in said suit, to-wit: "The N. E. $\frac{1}{4}$ of sec. 25, T. 8 S., R. 8 W.;" that on November 5, 1885, said homestead entry was canceled by the government; that on December 30, 1886, said John T. Reeves, at said land-office, paid the government in full for said land at the rate of one dollar and twenty-five cents ($1.25) per acre, and the same day received from the receiver of said land-office a receipt in full for the price of said land, including receipt for the payment of all fees for said office in the matter of said homestead entry; that said receipts and a certified extract from the tract book of said land-office in the matter of said homestead entry, also in evidence in said suit, showed that said payment by said John T. Reeves, in full payment of said land, was made by him as a homestead claimant, as was supposed, by virtue of and under the privilege confirmed by section 2 of the act of congress, approved June 15, 1880, and had relation to the original claim or equity acquired by him, whatever that was, by his said original homestead entry, made as aforesaid, for said tract of land on March 9, 1877.'  It is admitted that after 1879, and prior to the cash entry

on December 30, 1886, John T. Reeves, with the full knowledge that the land upon which he trespassed was not the land upon which he was living, cut the eight hundred sticks mentioned on the N. E. ¼ of sec. 25, T. 8 S., R. 8, and sold the same to Perkins & Miller."

Upon the facts as found, and as admitted in the record, the court gave judgment for the defendants, to which the plaintiffs excepted, reserving a bill of exceptions thereto, and thereupon sued out this writ of error.

On the facts as found and admitted the United States are entitled to a judgment, unless the effect of the purchase by Reeves, the original trespasser of the lands trespassed upon, was to estop the United States from further prosecuting the defendants for the value of the property converted. The defendants claim that as Reeves originally entered the land as a homestead in 1877, his purchase of the same from the United States in 1886, under the act of 1880, (21 St. at Large, 237,) and possession thereunder, related back to the date of the homestead entry, and thus effectually canceled the trespass, and this notwithstanding the fact that Reeves never lived upon, occupied, nor possessed the land, and the further fact that the entry of said lands by Reeves as a homestead had been canceled by the government. In the cases cited by counsel, where such effect has been given to such subsequent purchases, (U. S. v. Ball, 31 Fed. Rep. 667, and U. S. v. Freyberg, 32 Fed. Rep. 195,) the homesteader entered the land in good faith, and actually resided upon and possessed it; and there was no suggestion of any cancellation of the entry or abandonment of the same, nor in the lengthy and elaborate opinions given by the learned judges is there a suggestion that the homesteader took anything under the enabling act of 1880. The decisions cited from the land department, to the effect that under the act of 1880 the homestead settler, even after the cancellation of his original entry, can purchase the same tract at the full government price, provided it does not interfere with subsequent rights, (In re Riggs, 1 Dec. Dep. Int. 96; Railroad Co. v. Burt, 3 Dec. Dep. Int. 490; Hollants v. Sullivan, 5 Dec. Dep. Int. 115; Holmes v. Railroad Co., Id. 333; Railroad Co. v. McLean, Id. 529; Railroad Co. v. Elder, 6 Dec. Dep. Int. 409; In re Doolittle, 8 Dec. Dep. Int. 403,) do not deal, or pretend to deal, with the effect of such purchase on the status of property, such as timber, which became personal property when severed from the soil and removed from the land prior to the purchase. As Reeves never had possession of the land, and as his prior entry was canceled, he never had any title, legal or equitable, prior to December 30, 1886, a date subsequent to the institution of this suit. The trees cut and removed from the tract in question in 1879 became and were personal property, which undoubtedly then belonged to the United States. When the defendants received the timber, and converted it to their own use, they became liable to the United States for its value, and there was no reason why the United States, in thereafter selling the land, should renounce their just right to recover their damages already accrued; and such an intention cannot be presumed in the absence of an act of congress warranting such presumption. But in this case we are not left to

conjecture as to what was the intention of the United States in the sale to Reeves, and as to the property sold and the rights reserved. Reeves' purchase is under the act of 1880, the first and fourth sections of which read as follows:

"Section 1. That when any land of the United States shall have been entered, and the government price paid therefor in full, no criminal suit or proceeding by or in the name of the United States shall thereafter be had or further maintained for any trespasses upon or for or on account of any material taken from said lands, and no civil suit or proceeding shall be had or further maintained for or on account of any trespasses upon or material taken from the said lands of the United States in the ordinary clearing of land, in working a mining claim, or for agricultural or domestic purposes, or for maintaining improvements upon the land of any *bona fide* settler, or for or on account of any timber or material taken or used by any person without fault or knowledge of the trespass, or for or on account of any timber taken or used without fraud or collusion by any person who, in good faith, paid the officers or agents of the United States for the same, or for or on account of any alleged conspiracy in relation thereto: provided, that the provisions of this section shall apply only to trespasses and acts done or committed and conspiracies entered into prior to March 1st, eighteen hundred and seventy-nine: and provided, further, that defendants in such suits or proceedings shall exhibit to the proper courts or officer the evidence of such entry and payment, and shall pay all costs accrued up to the time of such entry." "Sec. 4. This act shall not apply to any of the mineral lands of the United States; and no person who shall be prosecuted for or proceeded against on account of any trespass committed or material taken from any of the public lands after March 1st, eighteen hundred nd seventy-nine, shall be entitled to the benefit thereof."

The said act is a part of Reeves' title, and contains a definite notice to him and the parties holding under him that there was to be no condonement for trespasses committed after the 1st of March, 1879, even when committed in the ordinary clearing of land, or for agricultural or domestic purposes, or for maintaining improvements upon the land of any *bona fide* settler, or for and on account of any material or timber taken by any person without fault or knowledge of the trespass, or for and on account of any timber taken or used without fraud or collusion by any person who, in good faith, paid the officers of the United States for the same, and much less for trespasses willfully committed, or for and on account of timber taken or used in bad faith, as seems to be the fact in this case, the special verdict reciting "that in 1879 he discovered that the land upon which he was actually residing was not included in his said entry, and after learning this fact he cut 800 logs from the land included in said homestead entry, and sold same to Perkins & Miller." It hardly seems necessary to add that the effect which defendants claim should be given to Reeves' after-acquired title, if sanctioned by the courts, would be to offer condonement in advance for trespasses on the public lands, as it would be practically saying to the large class of depredators, "Make a paper homestead entry; cut off the timber, and if the United States complain, take part of the proceeds and buy the lands with full pardon."

By the special verdict and the agreed statement of facts the timber that came to the hands of the defendants amounted to 800 logs, averaging 275 feet per log, aggregating 216,000 feet, for which the United States is entitled to recover at the rate (following the decision of the supreme court of the United States in *Wooden-Ware Case*, 106 U. S. 432, 1 Sup. Ct. Rep. 398) of $5 per thousand, amounting to the sum of $1,080. In that case it is said by Mr. Justice MILLER for the court:

"The timber, at all stages of the conversion, was the property of the plaintiff. Its purchase by defendant did not divest the title nor the right of compensation. The recovery of any sum whatever is based upon that proposition. This right, at the moment preceding the purchase by the defendant, was perfect, with no right in any one to set up the claim for work and labor bestowed upon it by the wrong-doer. It is also plain that by purchase from the wrong-doer defendant did not acquire any better title to the property than his vendor had. It is not a case where an innocent purchaser can defend himself under that plea; if it were, he would be liable to no damages at all, and no recovery could be had. * * * But here he has added nothing to its value. He acquired possession of property of the United States at Depere, which, at that place, and in its then condition, was worth eight hundred and fifty dollars, and he wants to satisfy the claims of the government by the payment of sixty dollars. He founds his right to this, not on the ground that anything he has added to the property has increased its value by the amount of the difference between these two sales, but on the proposition that in purchasing the property he purchased of the wrong-doer a right to deduct what the labor of the latter had added to its value. If, as in the case of an unintentional trespasser, such right existed, of course defendant would have bought it, and stood in his shoes; but, as in the present case of an intentional trespasser who had no such right to sell, the defendant could purchase none. Such is the distinction taken in the Roman law, as stated in the Institutes of Justinian, lib. 2, tit. 1, § 34. * * * To hold that when the government finds its own property in hands but one removed from these willful trespassers, and asserts its right to such property by the slow processes of the law, the holder can set up a claim for the value which has been added to the property by the guilty party in cutting down trees and removing the timber, is to give encouragement and reward to the wrong-doer by providing a safe market for what he has stolen and compensation for the labor he has been compelled to do to make his theft effectual and profitable."

It is, however, contended that the rule laid down in the case of *Wooden-Ware Co.* does not prevail in the state of Louisiana, where, it is claimed, "the milder rule of the civil law prevails;" and reliance is had upon the case of *Eastman* v. *Harris*, 4 La. Ann. 193; *Yarborough* v. *Nettles*, 7 La. Ann. 116; and *Whitehead* v. *Dugan*, 25 La. Ann. 409. It seems to have escaped the attention of counsel that the supreme court in the *Wooden-Ware Case* based their rule of damages upon the authority of the civil law as well as upon the common law, and that the case is cited with approval by the supreme court of Louisiana in *Gardere* v. *Blanton*, 35 La. Ann. 811. An examination of the Louisiana cases does not, however, sustain the contention. In *Eastman* v. *Harris*, which was a suit to recover the value of certain logs from a possessor in bad faith, the court below had given a judgment upon the value of the logs at the time of the conversion, from which judgment the defendant appealed; the plain-

tiff not appealing, but asking an affirmance of the judgment of the court below. The supreme court affirmed the judgment, using this language:

"If the plaintiff was only entitled to recover the value of the logs as they lay on the ground, the damages given by the district judge are excessive, but if he was entitled to the enhanced value of the logs, deducting the cost of their conversion into fuel, the judgment cannot be deemed excessive, and ought not to be disturbed. As the plaintiff has asked an affirmance of the judgment, it is not necessary to decide whether a possessor in bad faith, under such circumstances, is entitled to compensation for the labors bestowed upon it, and by which it has been converted into a more valuable form. But we may remark that it is at best questionable. The policy of the civil law was to sanctify and uphold the right of property by discouraging and punishing wrong-doers; and we find a learned court of common law, in a case very like the present, applauding the wisdom of the civil law, and citing it as authority. We refer to the case of *Betts* v. *Lee*, 5 Johns. 349, where a party had trespassed upon another's land, cut down the timber, and converted it into shingles. This was held not to change the title to the property, and the trespasser, it would seem, was not considered as having a right to remuneration for making them. In *Brown* v. *Sax*, 7 Cow. 95, where logs had been cut on the plaintiff's land, drawn to the defendant's mill and converted into boards, the judge charged that the measure of damages would be the value of the boards, without reference to the price of the defendant's labor, and this ruling was affirmed by the supreme court."

—From which it appears that the decision in the case of *Eastman* v. *Harris*, instead of being opposed to the rule laid down in the *Wooden-Ware Case*, is in direct line with it, so far as the decision of the court goes. In *Yarborough* v. *Nettles*, which was a suit for damages against the defendant for having maliciously cut timber off the plaintiff's land, there was a verdict in favor of plaintiff for $452, from which he appealed. The court say:

"The jury appears to have allowed the full value of the timber, and as their verdict is conclusive on the question of malice, the only ground seriously pressed upon us in argument for an increase of the judgment is that the jury should have allowed not merely the value of the timber, but its increased value when made up into lumber. If this be the rule, we are unable to perceive how the appellant should stop there, and not claim the value of the timber when worked up in buildings and furniture. The sum allowed by the jury will enable him to procure the same quantity of timber, and he may make out of that all the profits which his skill and ingenuity would have enabled him to make on his own by converting it to the uses of man. We are of opinion that justice has been done between the parties."

The sum of this case is that an owner cannot recover against a possessor in good faith the enhanced value placed upon the property by such possessor. This does not conflict with the *Wooden-Ware Case*, nor establish a different rule; rather the same rule. In the case of *Whitehead* v. *Dugan*, which was an action for tort or trespass against a purchaser from the original trespasser, the court held that "the defendant was not a trespasser, and that in his purchase from the original trespasser there was no offense, *quasi* offense of contract or *quasi* contract, nor obligation arising under operation of law in favor of the plaintiff, and that, as the suit was one for trespass, the plaintiff could not re-

cover." The court indulges in an *obiter* to the effect that if plaintiff had sued for the possession of his timber the defendants "would have been entitled to keep them on condition of paying the owner of the trees their value at the time they were cut," but expressly declares that "no such case is before the court."

In Louisiana a possessor in bad faith is not allowed to profit by his own wrong:

"An intruder may recover such expenses as are necessary for the preservation of things. A *negotiorum gestor* may recover what he has spent in doing the business necessary, which may be done for another, even without a mandate. It is a general rule of equity that no one shall enrich himself at another's expense, but this doctrine must not be stretched so far as to let an intermeddler recover for willfully doing what was not necessary to be done, and what the owner might not wish to have done, and what the law did not require to be done. If an intermeddler goes to the expense with a single view of benefiting himself, and reaps the benefit, he cannot demand a reimbursement for his time and trouble from the person upon whose property he has intruded by the suggestion that he, too, has been incidentally benefited." *Gibson* v. *Hutchins*, 12 La. Ann. 545. "Where one, through ignorance, commits a trespass on another's land by cutting and removing timber, he will be responsible only for the actual value of the timber used or destroyed. *Per Curiam.* The case is different where one willfully and knowingly commits a trespass on private property." *Watterston* v. *Jetche*, 7 Rob. (La.) 20. "It is well settled that the value of the trees, when first cut, is the measure of damages when the trespass is not willful, but the result of mere inadvertence. Id.; *Yarborough* v. *Nettles*, 7 La. Ann. 117."

Lord HATHERLY states the doctrine thus:

"When once we arrive at the fact that an inadvertence has been the cause of the misfortune, then the simple course is to make every just allowance for outlay on the part of the person who has so acquired the property, and to give back to the owner, as far as is possible, under the circumstances of the case, the full value of that which cannot be restored to him *in specie.*"

—And this statement of the then lord chancellor is quoted with approbation by the United States supreme court in the lastest case on this point: *Bolles Wooden-Ware Co.* v. *U. S.*, 106 U. S. 432, 1 Sup. Ct. Rep. 398.

In Louisiana it is well settled that the rule that no one should be allowed to enrich himself at the expense of another is limited to cases in which the alleged benefit arises from a lawful act. From unlawful acts, though they may prove beneficial to others, no right not expressly authorized by law can arise. See *Jenkins* v. *Gibson*, 3 La. Ann. 203; *Wood* v. *Lyle*, 4 La. Ann. 145; *Hollon* v. *Sapp*, Id. 519; *Jones* v. *Wheelis*, Id. 541; *Norman* v. *Ellis*, 5 La. Ann. 693. Considering the foregoing adjudged cases, I am unable to see that the rule of damages for the conversion of property taken by trespassers is different in Louisiana from the rule declared in *Wooden-Ware Case.* It is therefore ordered and adjudged that the judgment of the district court be and the same is reversed, with costs, and that this cause be remanded to the said district court, with instructions to enter judgment for the plaintiff against the defendants *in solido* for the sum of $1,080, with legal interest from judicial demand, and for all costs.