BREAUX, C. J.
Plaintiffs, owners of the S. y2 of N. E. % and N. W. % of N. E. %, section 30, township 14 S., range 8, S. E. land district—112.32 acres—claimed damages for cutting down trees thereon and taking them away. They charge that 102.32 acres of the land above described, though heavily timbered, was denuded of its cypress trees. That on this land were trees enough to produce 30,000 feet of merchantable lumber to the acre. They characterize defendant’s act as a trespass and a depredation of which they knew nothing until about six months prior to the institution of this suit.
Plaintiffs, in the body of their petition, set up their title to the land and aver that they were in possession. The prayer of their petition has no demand for a recognition of the title, or for possession. They pray for a judgment in the sum of $61,200, for the.trees removed from the land.
Plaintiffs, some time after their original petition had been served, filed a supplemental petition, in which they claim the value of the timber after its manufacture into lumber.
Defendant sets up a general denial, and in addition specially avers that it bought the land in question from the Lafourche Basin Levee District by act dated June 18, 1902. Defendants further allege that this land was years ago adjudicated to the state for delinquent taxes, and passed from the state to the levee board. They aver, further, that they had possession; that they acted in good faith, and that they did remove timber from the land to the value of about $1,200, about one year before this suit was brought.
Defendant specially denies plaintiffs’ title to' the land, and avers that plaintiffs never had paid the taxes thereon for a period of at least 40 years before the suit and during the time never were in possession.
After this answer had been filed, defendant pleaded an exception of no cause of action. The exception was referred by the court to *588 the merits, over defendant’s objection. Defendant also pleaded the prescription of six months, under Act No. 13, p. 10, of the Session of 1892, and it also pleaded the prescription, estoppel, and prohibition of article 233 of the Constitution. Defendant also pleaded the unconstitutionality of Act No. 147, p. 231, of the Acts of 1900, entitled “An act to adopt a standard scale for the measurement of saw-logs.”
The attorneys by whom the pleadings were drafted are not the attorneys of record on appeal.
The facts are, to wit: Plaintiffs, through the late Henry St. Paul, father of three of the petitioners and grandfather of the other three, who are also petitioners, traced their title to the state, as evidenced by patent dated February 27, 1861. As well state here that defendant’s objection to the patent in question is that it never had been recorded in the parish in which the land is situated before the suit was brought.
As alleged, defendant bought the land from the levee board. The sale contained a non-warranty clause.
With reference to the tax deed under which defendant claims that the state acquired, it appears that the sheriff of the parish of Lafourche, on the 26th day of December, 1866, filed a statement in the clerk’s office of lands forfeited for nonpayment of the state taxes for the year 1865, and among these lands were included the land which defendant says was forfeited to the state. The said statement or certificate of the sheriff was, it seems, recorded in the conveyance office on the date just stated. It does not appear that anything else was done in regard to this title. If any other records ever existed, they cannot be found. It is not evidenced that any assessment was ever made, only the tax deed contains the following phrase, “To whom assessed,” indicating that an assessment had been made. No list of delinquent taxes can be found in the auditor’s office.
In addition to the foregoing fact stoutly urged by the plaintiff against the validity of this assessment or the legality of a tax claim, the land is not described; the attempt at description is not a description.
Having sufficiently stated the facts relating to title for the purpose of deciding, this-brings us to a narrative of the facts regarding notice brought home to defendant that plaintiff is the owner under the state patent of 1861. The testimony leads to the inference that defendant, through its authorized agent,, knew that a patent had been issued to plaintiff’s ancestor. Defendant had notice, or, under the law, must be held to have had notice of the absolute defectiveness of the tax title under which defendant claims that the land inured to the state.
Defendant had notice, or, under the law, must be held to have had notice, of the fact that the state had never transferred the land to the levee board, as it does not appear that the list required had ever been made by the auditor and the Register of the Land Office.
This brings us to a consideration of the facts touching possession.
Each of the parties to the suit claim possession. Being swamp land, not habitable, out in the wilds, possession is easily claimed, but not easily proven.
It is manifest that defendant went into possession sufficiently to take away the trees that were on the land.
This, plaintiff alleges, was an act of trespass of which defendant cannot avail itself as a defense, as relates to possession. There is, on the other hand, as relates to plaintiffs, nothing showing that they ever took actual possession of the land, or exercised dominion over the land in any way; not even paying the taxes. They became concerned about this land (about which they knew nothing or very little) only a short time before the suit was brought.
The value of the trees presents the next question of fact which requires our attention. The estimate of the number of trees *590 taken by defendant varies from tbe 15,000 feet of timber to the acre, to twice that amount on heavily timbered land.
The price, or rather the value, of the trees, also varies from $1.50 to the standing tree, to $5 a tree. We may as well state here that the former, $1.50, appears to us too little, and the latter, $5, is not sustained by the weight of the testimony, although the evidence does show that, at the time the trees were taken away, cypress trees were in demand, and the value higher than it had ever been before that date.
The value of the number of feet of lumber produced by these trees, taken as before mentioned, is not clearly shown by plaintiffs’ witnesses. This testimony is rather rambling, and is lacking in conclusiveness. There is evidence showing the value of the respective grades of lumber. The percentage of these grades, with reference one to the. other, and the value of each grade, have assisted us in deciding.
We hope we have determined with some accuracy the total of all the grades, and the value of each.
As relates to another question of facts, we have not found how much lumber was gotten off of the different subdivisions of the section of land in question.
It appears that the plaintiff only bought the N. E. %, measuring 37 and a fraction acres, while the facts are that lumber was cut down and taken on other subdivisions of section 30, and, from the evidence, we conclude that this additional lumber must have been taken from the other portions of plaintiff’s land.
The plea of one year’s prescription having been filed, it becomes necessary to state that the lumber was cut and taken away within the year preceding the suit.
The ease was tried before a jury. A verdict was found for plaintiff in the sum of $12,638 and interest.
The exception of no cause of action presents the first question for our consideration. The petition sets up a cause of action, imperfect as this petition is.
Had defendant timely interposed this plea, plaintiffs would have encountered difficulty in proving up their claim. The exception was filed after the answer had been filed.
We have said that plaintiffs’ petition is'imperfect and incomplete, because it sets forth the value of the trees taken away and only claims that value. But petitioners failed to allege that they were the owners of the land. It remains that when their petition was filed, the trees had been removed by the defendant. They were movable, and the action for their value was personal.
Without an averment of ownership, and without defendant’s demand, they would have had to depend upon the varying testi•mony of the witnesses to prove up the right claimed. But defendants did not stand exclusively upon their rights as defendant, and upon a denial of plaintiffs’ right to recover; they went further: they pleaded over and reconvened, asking to be recognized as owners of the land and of the trees taken therefrom. They, to the extent that they reconvened, as before mentioned, became plaintiffs in a petitory action, and thereby opened the door to plaintiffs, to prove up their title to the land. They, plaintiffs, had the right to defend themselves and introduce evidence to prove that defendant was not the owner.
The exception of no cause of action cannot modify or change the nature of defendant’s answer previously filed, or nullify its effects. Despite the exception of no cause of action, the reconventional demand remains.
Plaintiffs and defendants had made up the issues for the trial. They could not be changed by the defendant by filing the exceptions before mentioned.
We leave this branch of the case with the statement that defendant chose to claim title; it could not, after the plea pleaded, change *592 the issues, and hold the ground that plaintiffs could not stand in judgment for the trees and the land as well. Eastman v. Harris, 4 La. Ann. 193; Denton v. Erwin, 5 La. Ann. 18; Devall v. Succession of Watterston, 18 La. Ann. 141; St. Amand v. Long, 25 La. Ann. 164; Sully v. Spearing, 40 La. Ann. 558, 4 South. 489; Dalton v. Wickliffe, 35 La. Ann. 356.
There was, in view of the issues as made up by defendant, a trial of titles. The defendant could not claim title without allowing plaintiffs to show that it erred, because plaintiffs had the title.
We pass from this exception to a consideration of the titles pleaded. Both parties, in fact, trace back their rights to the state patent obtained to the land in 1861.
This patent was a complete title, not questioned by either party. As this was the situation, it was incumbent upon defendant, in order to recover, to prove that the land covered by this patent passed to the state in a legal manner. This, in our view, the defendant has failed to do. The following are our reasons for thinking that the title did not pass to the state: The act of the session of 1855 (Laws 1855, p. 502, No. 346) under which this land was disposed of, directed the tax collector to prepare a list of all lands of the taxpayer “containing a minute and particular description of the land.” Words we quote from section 57 (page 515), of the act ■cited, supra.
There is no evidence before us that this list was ever forwarded to the auditor. If such a list was forwarded to the auditor and was destroyed, it did not contain “a particular description of the land,” for the copy from the tax collector’s office does not contain, as before mentioned, a description of the property.
It cannot be identified by the imperfect description set forth in this copy, forwarded, as before mentioned, to the auditor.
An attempt at description, set forth in this copy, mentions the names of two property owners, Spangler and Granier, neither of whom owned land near plaintiffs’ land. A map of survey before us shows that the two owners, Spangler and Granier, owned, respectively, a tract of land about three miles from the land in controversy. There is a stream between this property and several sections of land not owned by the persons named as owners, but by other persons. To show the locus in quo, we insert a sketch:

In addition to the foregoing informality, we notice that it was the duty of the auditor to publish accounts and enter the list of lands assessed for taxes and to be sold therefor on a record kept by him for the purpose.
This does not seem to have been done. In view of the failure to properly inscribe this list and comply with the statute regarding lands disposed of at a tax sale, we cannot see our way to a decision recognizing these tax proceedings as sufficient for a land title.
Defendant invokes the presumption of *594 omnia rite acta. This presumption frequently serves a very good, purpose. We do not think it can he extended to the length for which we understand defendant to contend. This presumption, of itself and by itself, will not supply lost documents, establishing title to land, if there ever were such documents, and much less can it supply the absolute want of such documents, if none were ever made.
There is another objection to the title which defendant claims. In considering this question, it must be remembered that the title under which defendant claims was a tax sale of land of which the levee board illegally-assumed control. The defendant avers that the land in question inured to the levee board under Act No. 97, p. .107, of 1890.
There is a clause in said ’ act which has heretofore been construed as a condition precedent. This clause had not been complied with. It provides that the land was to be vested in the levee board upon the execution of an instrument of conveyance by the auditor and the register of such land documents; and it further provides that it is to be recorded in the recorder’s office of the parish. This does not appear ever to have been done. The defendant only holds the deed, as before stated, from the levee board.
It must be said that defendant’s deed of property thus acquired was properly recorded, and that it was executed for valid consideration.
The defendant’s contention is that the grant by the state of these lands, sold at tax sale, was a grant in presentí, and that the provision for the making out of a list by the auditor and the Register of the Land Office, was intended as descriptive, and that instead of being a condition precedent, it was a ■condition subsequent, and, as such, could only be taken advantage of by the grantor in the event of failure to make out the list.
This argument of learned counsel for defendant would have force were it not that this court has taken a contrary view in a decision recently handed down. As this decision relates to real property, it can be set aside only upon most convincing grounds. It has become a rule of property.
Under the interpretation in decision cited, infra, the clause is not directory, but mandatory. Williams v. White Castle Lumber Co., 114 La. 450, 88 South. 414.
The next ground urged on the part of the defendant is that the plaintiffs’ patent of 1861 was never inscribed in the parish. That is true; but jurisprudence has never held that patents issued by the sovereign have to be recorded in order to affect the validity of the grant.
The United States laws have given these patents effect after proper registry in the United States Land Department. We leave this branch of the ease with the statement that the acts of sales from the state need not be recorded. Tear v. Williams, 2 La. Ann. 868.
There is a fact in connection with this patent which attracts attention, to wit: The defendant was aware through its agents, or one of them at any rate, that this patent had been issued and was duly recorded in the Land Office before it bought the land from the levee board.
The purchasing agent of land for the defendant company, in the' presence of the president of the defendant company, testified that upon search among the records of land titles he had found that this land had been patented, as before mentioned, to plaintiffs’ ancestor.
It was after he had found this title that the defendant bought the land from the levee board, as we have mentioned. We leave this branch of the subject, thoroughly convinced that plaintiff had a title, and that the paper title which issued to the defendant, although for valid consideration, can *596 not be of any avail against plaintiffs’ title. It must be held, null, particularly under tbe decision before cited, of Williams v. White Oastle Lumber Company, supra.
The question of good faith next arises. The defendant strongly urges its good faith, while, on the other hand, the plaintiffs stoutly deny that the defendant was in good faith.
Touching the bona fides or the lack of them, vendor, the levee board, and vendee, the defendant, were in the same category. The fact that vendor, the levee board, made an illegal sale, does not relieve vendee, the defendant, from responsibility.
Whatever may be said as to the act of the defendant in taking the trees, from a moral point of view, does not enter into the question here. We must hold, under the law, that, on technical grounds, vendee’s act was illegal.
It was an error of law, and falls within the grasp of the principle laid down in the following decisions.
The oversight, or whatever it was, was no shield to him in support of his alleged good faith. Dohan’s Heirs v. Murdock, 41 La. Ann. 494, 6 South. 131; Montgomery v. Whitfield, 41 La. Ann. 649, 6 South. 224; Fletcher v. Cavelier, 4 La. 277; Eastman v. Beiller, 3 Rob. 220; Reeves v. Towles, 10 La. 276; Avery v. Allain, 11 Rob. 436; Hobson v. Peake, 44 La. Ann. 388, 10 South. 762.
Possession is clearly defined in the articles of the Code, and needs little interpretation. Civ. Code, arts. 3451, 3452.
Having arrived at the conclusion that defendant had no title and no right to take the trees from the land, we are led to inquire into the extent of the liability for the trees taken.
The contention of plaintiffs is that they are entitled to the value of the logs after the logs had been manufactured into lumber, less the cost of manufacture.
Defendant earnestly controverts this claim; and its insistence is that if liable at all, it. is liable for the value of the trees.
The authorities shall decide the controversy.
There are at least two decisions of our own jurisdiction which have bearing: Eastman v. Harris, 4 La. Ann. 193; Pirtle v. Price, 31 La. Ann. 357.
These decisions find ample support in the decisions of other jurisdictions, which we have at hand.
We are informed that the “law in England is stated to go much farther; that whatever alteration of form any property has undergone, the owner may seize it in its new shape, if he can prove the identity of the original material; as leather made into-shoes, cloth into a coat, trees squared into timber.”
In Curtis v. Groat, 6 Johns. (N. Y.) 168, 5 Am. Dec. 204, this principle was applied to-wood converted into coal. The court said:
“The defendant’s timber, by being cut and converted into coal, had indeed lost its primitive form, but the identity of the original was-here ascertained or admitted.” Baker v. Wheeler and Martin, 8 Wend. (N. Y.) 505, 24 Am. Dec. 66.
In a case involving the wrongful taking of logs, the court said that the owner had a right to the boards which defendant made of them. Brown v. Sax, 7 Cow. (N. Y.) 96.
The last decision we will cite upon the subject is very interesting. It points to the civil law, and recalls the illustration borrowed from Justinian, that grapes made into wine do not pass by accession “unless the materials had been taken away in ignorance of their being the property of another.” Betts & Church v. Lee, 5 Johns. (N. Y.) 348, 4 Am. Dec. 368; citing English decisions.
We therefore conclude that defendant owes to plaintiffs the value of the lumber, less the cost of manufacture.
We hold as the act was one of trespass, *598 that the plea of any term of years is not a bar, for the defendant never had legal possession, or possession a sufficient length of time to obtain a right.
Defendant, for reasons stated before, has not acquired any right under article 233 of the Constitution.
Plaintiffs (as in Ramos Lumber Co. v. Labarre, ante, p. 559, 40 South. 898) are not asking to annul a tax title, “but is a defendant resisting” an attack. The defendant has not made out any title or right of possession. A trespass, under the circumstances here, is without right to successfully invoke prescription.
The charge of the court met with objection from the defendant, and the grounds of objection are pressed upon our attention. The facts are before the court, and the issues can be decided, and for that reason the objection to the charge can have no legal effect.
We do not think that this case should be remanded, as another verdict would not throw any additional light, even if the charge had misled the jury. We have not found that to be the ease.
The number of feet taken in trees and the value of the lumber into which they were converted presents another issue.
The rule of measurement is attacked by defendant as illegal. We think that the objection on that score is sufficiently answered by citing Act No. 64, p. 89, of 1898.
Owing to the fact that the cited statute was overlooked, plaintiffs followed another rule of measurement, Act No. 87, p. Ill, of 1892.
The rule followed, that of Act No. 64, p. 89, of 1898, by the witnesses, was legal. The amount due for the lumber is, therefore, the sum of $9,594.
For reasons stated, the judgment appealed from is amended by reducing the amount to $9,594, with 5 per cent, interest from the date of this judgment; and as thus reduced and amended, the judgment of the district court is affirmed.
Appellee is condemned to pay cost of appeal.