———o———

No. 6758.

# LOUISIANA COOPERAGE CO. v. LOUISIANA BOX COMPANY.

### Syllabus.

1.  A person who in bad faith takes logs belonging to an-
    other and manufactures same into lumber, is liable to
    the owner for their value in their manufactured state,
    less the costs of manufacture.

2.  Where the sum demanded is unliquidated and not read-
    ily ascertainable, such as by mere computation or by
    reference to established market values or the like,
    interest will be allowed from date of judgment only.

Appeal from the Twenty-eighth Judicial District Court,

Parish of Jefferson, Hon. John E. Fleury, Judge. Amended.

R. H. Marr and J. Howell Pugh, for plaintiff and ap-
pellee.

L. H. Marrero, Jr., for defendant and appellant.

His Honor, EMILE GODCHAUX, rendered the opinion
and decree of the Court, as follows:

Plaintiff, charging that defendant in bad faith and with
full knowledge that certain gum logs belonged to plaintiff,
none the less purchased and secured delivery thereof from
one John Wells and thereafter manufactured same into
staves and headings, sues defendant for $624.00, being the

20

alleged value of said staves and headings, less the cost of manufacture. The defendant answered that the owner of the logs was not the plaintiff but the Capital City Bank, from which concern defendant avers it purchased the logs in good faith and secured a good title; and the bank is called in warranty. The trial Court having awarded plaintiff judgment for $481.45 and dismissed the call in warranty, defendant has appealed.

The main question presented, one of fact only, is whether or not certain gum logs, aggregating 43,177 feet, removed from Greenwood Landing by defendant and brought down the Mississippi River to its mill and there manufactured, were part of a larger lot of logs, aggregating some 315,000 feet, that plaintiff had previously purchased at Greenwood Landing from one Wells and had at the time of purchase branded with its mark, L. C.

Clack, the owner of the land from which the logs in question were cut, was present when they were being removed by defendant from Greenwood Landing, and swears that the logs bore plaintiff's brand, L. C., and no other brand. A. Blanchard and C. Blanchard examined the logs when they were being floated or towed down the river by defendant and they testify positively that they were branded L. C. Killingsworth, another witness for plaintiff, testifies that he saw the logs at defendant's mill, part of them in the water and some of them in the process of being sawed up, and that they were branded with plaintiff's brand aforesaid.

The testimony of these witnesses for plaintiff is of the most positive and convincing character and impresses us more favorably than the essentially negative testimony of the three witnesses for defendant, none of whom had any cause or occasion for particularly examining the logs

21

for the purpose of ascertaining the character of the brands upon them. Moreover, the trial Court accepted plaintiff's version of the transaction and we find no manifest reason for disturbing its findings in this respect.

And the same testimony which establishes that defendant appropriated to its own use logs bearing the brand of another, discloses with equal certainty that the conversion was in bad faith and with full knowledge that the logs in question were the property of plaintiff. The Court consequently properly awarded damages on the basis of the value of the logs in their manufactured state, less the costs of manufacture, plaintiff having already paid the real owner for the logs. R. C. C., 525.

*St. Paul v. La. Cypress Company,* 116 *La.* 594.

Nor was there any error in dismissing the call in warranty for Wells and not the Capital City Bank undertook to sell to defendant (or to the latter's President, McLeod), the logs in question that had already been sold and delivered into possession of plaintiff. This is established conclusively by the drafts, receipts, vouchers and other documents as well as by the more credible testimony in the record, all of which discloses that to the knowledge of all parties the bank, called in warranty, held simply a pledge or chattel mortgage and acted merely as an intermediary or agent of Wells in the sale of the logs.

We gather that by a supplemental answer, not in the transcript, the defendant sought to shift responsibility by alleging that one McLeod, its president, and not itself was guilty of purchasing, removing and appropriating the logs in dispute.

Aside from the technical objections which correctly governed the Court in its refusal to permit the filing of this

. 22

amendment, and aside also from any question of defendant's interest or advantage in shifting responsibility from itself to its president who apparently owns practically all its shares of stock, the evidence establishes that defendant itself undoubtedly was the party guilty of taking the logs from the landing and thereafter manufacturing them into staves, etc. This is shown by defendant's letter to plaintiff and by other documentary evidence as well as by the testimony of its own employees; and consequently defendant is liable for the conversion, whether the real purchaser from Wells be itself or its president.

The ruling of the Court in declining to permit the filing of an intervention by McLeod is not before us, since McLeod has not appealed.

The remaining question is whether or not the amount awarded as damages bear interest from the date of the taking of the logs, or from the date of judgment, or from judicial demand.

In two cases quite similar to this interest from date of judgment only was allowed.

*St. Paul v. La. Cypress Co.*, 116 *La.* 594.
*Guarantee Co. v. Drew*, 107 *La.* 251.

This is in accord with the doctrine that where the sum demanded is unliquidated and not readily ascertainable by mere computation or by reference to established market values or the like, interest will be allowed only from date of judgment.

32 *Cyc.*, 1512, 1514.

The rule is applicable here; for the number of logs taken, their value in their crude and in their manufactured state and the costs of manufacture—all essential elements in fixing the extent of recovery—could not be ascertained until judgment.

23

The judgment is accordingly amended so as to provide that interest shall run from date of judgment only, that is, from April 27, 1916, and as thus amended the judgment is affirmed at appellee's costs in this Court.

Amended.

Opinion and decree, November 20, 1916.

Rehearing refused, December 18, 1916.