13 So.2d 861

BRUNNING v. R. W. HILLCOAT CO. et al.

LESTER et al. v. SAME.

No. 36776.

April 12, 1943.

Rehearing Denied May 17, 1943.

Lindsay McDougall, of Covington, and Frederic C. Querens, of New Orleans, for defendants and appellants.

Ellis, Ellis & Barranger, of New Orleans, for plaintiffs and appellees.

HIGGINS, Justice.

These two actions for damages for wilfull and deliberate trespass in cutting and removing a quantity of merchantable trees from the respective lands of the plaintiffs

were consolidated for trial with the stipulation that separate judgments be rendered.

In both cases the defendants admitted that the plaintiffs owned the lands in question; that their employees cut and removed certain long leaf pine and cypress trees therefrom and manufactured it into lumber; and that they were liable for the stumpage value of the timber. They pleaded having acted in good faith and denied having acted in either moral or legal bad faith.

After a trial on the merits, the district judge concluded that the defendants were in legal bad faith and rendered separate judgments in favor of the plaintiffs for damages for the manufactured value of the timber, less the cost of manufacturing it.

The defendants appealed from both judgments. The plaintiffs answered the appeals and prayed that the amounts awarded them be increased.

The cases were consolidated for hearing here.

The first question to be decided is whether or not the defendants acted in good faith, in legal bad faith, or in moral bad faith in committing the trespasses.

It is admitted that the plaintiffs are the separate owners of two different 40 acre tracts of land in Section 19, Township 7, South Range 12 East, in St. Tammany Parish, and that the defendants are the owners of a 160 acre tract in Section 20, Township 7, South Range 12 East, St. Tammany Parish, and another tract of 124 acres in Section 28 of the same township, range and parish.

■ The defendant sawmill company is a partnership composed of two partners, who employed Ed and Ross Jenkins as log haulers, and at times directed them to point out to the saw hands working for the defendants the lands from which trees were to be cut and also instructed them how to cut the timber. In November, 1940, A. J. Carroll, the superintendent of the defendant sawmill company, ordered Ed Jenkins to have the saw hands cut the timber from the lands purchased by the defendants from John P. Rausch in St. Tammany Parish, somewhere in the vicinity of the Abita Road. · He did not furnish Jenkins with a map or description of the lands and neither he nor Jenkins made any search of the public records to locate the property of defendant or to determine who owned the property upon which they trespassed. Jenkins contacted a local man by the name of Strain, who pointed out to him the 40 acre tract belonging to the plaintiff Brunning, but stated that Rausch owned it at one time, and also pointed out the 160 acre tract owned by the defendants. The second tract was wet or marshy land and Jenkins and the saw hands, without any further inquiry or investigation, went on the plaintiff Brunning's 40 acre tract of high land and after cutting nearly all of the timber therefrom, went on the other plaintiff's (Mrs. Lester, et als.) high land and cut most of the timber from their 40 acre tract, but did not cut any timber from the defendants' 160 acre tract. Aside from the fact that the defendants' land is in a different section than the property of the plaintiffs, it was also shown that the defendants' land is located 2 miles from the

Lester tract and one-half mile from the Brunning property.

This is not a case where an adjoining owner went beyond his property line upon his neighbor's land and cut timber—but is one where the defendants' superintendent and employees, through gross recklessness and carelessness went upon the lands of the plaintiffs and cut the trees on 80 acres of land when they knew that the Rausch tract from which they were supposed to cut the timber only contained 40 acres of land. It is, therefore, our opinion that our learned brother below properly held that the defendants were in legal bad faith in trespassing upon the plaintiffs' lands. Hickman et al. v. Hill, Harris & Co., 168 La. 881, 123 So. 606.

■ Since the defendants acted in legal bad faith in cutting and removing the timber from the plaintiffs' property, they are liable in damages for the manufactured value of the timber, less the cost of manufacture. St. Paul et al. v. Louisiana Cypress Lumber Co., Ltd., 116 La. 585, 40 So. 906; State v. F. B. Williams Cypress Co., Ltd., 131 La. 62, 58 So. 1033; Hickman et al. v. Hill, Harris & Co., Inc., et al., supra.

■ The parties dictated a stipulation in the record showing the amount of cypress timber cut from the lands of the respective plaintiffs. In their answers to the appeals the plaintiffs questioned the correctness of the holding of the trial judge as to the amount of pine timber that was cut from the lands, the value of the pine and cypress timber cut; removed and manu-

factured into lumber, and the cost of manufacturing the timber into lumber.

In his written opinion the trial judge states that he was impressed with the testimony of Frederick LeMieux, an expert on timber and lumber values, and used his method of calculation and, to a great extent, his written report and testimony, but concluded that his figures that 75,926 board feet, lumber scale, of pine timber was cut and removed from the Brunning tract, and 46,552 board feet, lumber scale, of pine was removed from the Lester land were too high, and fixed the amount of pine timber cut and removed from the Brunning tract at 62,500 board feet, lumber scale, and the amount of pine timber cut and removed from the Lester land at 40,000 board feet, lumber scale. The reason assigned by the district judge for making this reduction in the LeMieux figures was that he (LeMieux) had probably counted many stumps resulting from previous cutting of pine trees on the two tracts of land.

Frederick LeMieux, plaintiffs' witness, testified that it was easy to determine the old stumps from the new ones because of discoloration and the condition of the bark, and that he had eliminated all the old stumps in making his calculation. He counted 362 new pine stumps on the Brunning tract and 292 new ones on the Lester property.

The defendants' estimator counted 379 new pine stumps on the Brunning tract and 298 new ones on the Lester property. He also stated it is easy to determine the old stumps from the new ones and he noticed some one had marked the old ones prior to

the time he counted them. This strongly corroborated the testimony of Frederick LeMieux, as to the number of board feet, lumber scale, of pine that was removed from the respective tracts of land.

The trial judge was compelled to disregard the figures and the method of calculation employed by the defendants' estimator, because he changed them twice during the trial of the case.

There is nothing in the record to show that the figures of LeMieux are incorrect or that his methods of calculation are faulty. He is clear and positive in his statements made after thorough investigation and careful computations. Consequently, they have not been placed in doubt and should prevail, especially as the trial judge expressed confidence in his testimony and calculations. We, therefore, find from the evidence that the defendants cut and removed from the Brunning tract 75,926 board feet of pine, lumber scale, and 46,522 board feet of pine, lumber scale, from the Lester property.

The pine trees removed from both tracts consist almost entirely of long leaf and some slash, which has a greater value than short leaf pine.

It is conceded that the cypress cut and removed from the Brunning tract is 7,142 board feet, lumber scale, and that the cypress cut and removed from the Lester tract is 16,445 board feet, lumber scale.

Frederick LeMieux testified that the average mill run prices received from products of such long leaf pine and cypress timber would approximate the sale price of Number 1 Common lumber and

that $41 per M, board feet, lumber scale, would be a fair market price for the pine timber at the mill as of November, 1940.

Alfred Alexis, plaintiffs' witness, a retail lumber merchant, testified that No. 1 Common pine, in November, 1940, was worth $48 per M, board feet, lumber scale, and that he had been paying that price to the plaintiff Brunning, who operated a sawmill, and to others. His statement was corroborated by Brunning.

The four witnesses of the defendants, including A. J. Carroll, defendants' superintendent, testified that No. 1 Common pine, as of November, 1940, was worth between $28 and $35 per M, board feet, lumber scale. On cross-examination, it was shown that these witnesses were including rough green lumber and short leaf pine and they admitted that long leaf pine had a greater value.

The trial judge allowed $35 per M for the pine lumber as an "equitable" value therefor. He apparently arrived at this conclusion by averaging the various amounts testified to by the witnesses.

It is our view that the plaintiffs have established that the long leaf pine lumber No. 1 Common had a value, in November, 1940, of $40 per M.

With reference to the cypress lumber No. 1 Common, it was shown by defendants' and plaintiffs' witnesses, who were familiar with the prices of cypress lumber, that it was worth between $60 and $85 per M in November, 1940. The trial judge fixed $55 per M as the "equitable" price for this lumber. We think the overwhelming preponderance of the evidence shows that cypress lumber No. 1 Common had a value of $60 per M, as of date November, 1940.

The district judge fixed the cost of manufacturing the timber into lumber at $15 per M. The only evidence in the record on this score is that of the plaintiff Brunning, who states that it cost $12 per M to manufacture No. 1 Common long leaf pine and cypress lumber. The judge made an allowance of $3 more, because he states that the defendants had to haul the timber seventeen miles to their mill, whereas, the plaintiff Brunning would only have had to haul it three miles to his own mill.

The evidence shows that Brunning's sawmill was seven miles from where the timber was cut. There is not any evidence to show how many miles the defendants' mill is from the lands from which the trees were cut. Although the defendants' superintendent was on the witness stand, he made no effort to contradict the figures furnished by Brunning making up the sum of $12 per M to manufacture the timber into No. 1 Common lumber. There is nothing in the transcript which justifies the trial judge in adding $3 to the amount of $12.

It is our opinion that the evidence shows that $12 is the correct cost of manufacturing the timber into No. 1 Common lumber. We shall, therefore, amend the judgment in the respects above indicated.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court is amended by increasing the award in favor of the plaintiff, Thomas E. Brunning, and against the defendants, R. W. Hillcoat Company, Robert W.

Hillcoat and Harry A. Black, individually and in solido, from the sum of $1,535.92 to $2,468.73, and the judgment, as amended, is affirmed; and

It is further ordered that the judgment of the district court is amended by increasing the award in favor of the plaintiffs, Anna Upton Lester, wife of Jerome B. Lester, Amy Upton Kinkade, wife of Charles Kinkade, Phoebe Upton Heard, wife of Walter W. Heard, Louise Upton Bertaut, wife of Duval R. Bertaut, Eldon C. Upton and John M. Upton, and against the defendants, R. W. Hillcoat Company, Robert W. Hillcoat and Harry A. Black, individually and in solido, from the sum of $1,457.87 to $2,092.81, and the judgment, as amended is affirmed.

The defendants are to pay all costs of court.

ODOM, J., absent.