TERM OF 1901-1902.                251

Trust and Safe Deposit Co. vs. Investment Co. et als.

No. 14,108.

GUARANTEE TRUST AND SAFE DEPOSIT COMPANY VS. E. C. DREW INVEST-
MENT COMPANY, ET ALS.

### SYLLABUS.

1.  A purchser of standing timber, whose good faith is otherwise established, will not be held to have been in bad faith simply because the records showed that the seller did not have title to the land.

2.  In order to be in good faith, a purchaser of timber is not obliged to investi-gate the authority of the firm he deals with, where such firm is reputable and is engaged in the business of buying and selling lands and timber both for itself and for others.

3.  A firm is liable for the tort of one of its members committed in the course of the partnership business and whereof the firm has had the benefit.

4.  The individual members of a firm are liable for the tort of one of the members of the firm, although they had no knowledge thereof, where such tort was committed in the course of the partnership business and for the benefit of the partnership.

5.  Where a partnership advisedly sells the timber of a third person to an inno-cent purchaser, who cuts down the timber and takes it to market and sells it, both the partnership and the purchaser are trespassers, and are solid-arily liable in damages to the owner of the timber; but in fixing the amount of damages decreed to be paid by the parties, a different basis will be adopted; as to the innocent purchaser, the basis will be the value of the timber at the stump; as to the firm, held as a trespasser in bad faith, the basis will be the value of the timber after reaching market.

APPEAL from the Sixth Judicial District, Parish of Ouachita—
Hall, J.

*Merritt Munholland* and *Andrew Augustus Gunby,* for Plaintiff, Appellant.

*E. Tyler Lamkin,* for The E. C. Drew Investment Co., Defendant, Appellee.

*Stubbs & Russell,* for M. S. McGuire, Defendant and Appellee.

The opinion of the Court was delivered by

PROVOSTY, J. The defendant firm, the E. C. Drew Investment Com-pany, was engaged in the business of buying and selling lands and timber and of acting as agent for the owners of lands and timber in selling the same. It bargained with the co-defendant, Manning S.

Maguire, for the sale to him of timber, and referred him to its agent Lee Harris, one of the defendants, to point out the timber and agree upon a price. Harris pointed out the timber of plaintiff, and Maguire cut, removed and sold the same. And this suit is for damages against all said parties, and against the members of the E. C. Drew Company individually, *in solido,* upon allegations of conspiracy to depredate upon plaintiff's lands.

Maguire pleads the general denial, and that he bought the timber in good faith. The E. C. Drew Investment Company and the members individually, plead the general denial, and also that the timber sold by them was on their own property. They specially deny the allegations of conspiracy.

We think that Maguire bought the timber in good faith. Drew & Co. were a reputable firm selling timber for their own account and for others; to deal with them was in regular course. Maguire was under no obligation to investigate their authority; our law does not expect that suspicion and distrust shall inspire the conduct of our business men in dealing with each other, but rather an honest business confidence. Good faith, says our code, is presumed until disproved.

For certain purposes registry conveys notice, or knowledge, and defendant's counsel argues that the registry of plaintiff's title conveyed to Maguire knowledge that Drew & Co. were not owners of the land. Counsel cites in support of this contention the case of Heirs of Dohan vs. Murdock, 41 Ann. 494. The case is good authority against the contention of counsel. See also the cases of 4. La. 474; 5 La. 242; 33 Ann. 769; 38 Ann. 885; and Heirs of Ford vs. Phillips, 47 Ann. 339.

The E. C. Drew Investment Company and the individual members thereof must be held liable to plaintiff as trespassers in bad faith. The sale of the timber was made advisedly; and it was made in the course of the partnership business, by the managing partner of the firm, in the name of and for the benefit of the firm; and the price went into the coffers of the firm. Under these facts all the partners are liable.

Their defences are, first, that Drew did not authorize Harris to sell the timber on the land of plaintiff, but only the timber on the land of the E. C. Drew Investment Company.; and, second, on the part of the individual members of the firm, that they had no knowledge of the transaction, and, as a consequence, are not parties to it and are not responsible for it.

If it were conceded that Harris in selling the timber of plaintiff transcended his authority, still, on familiar principles, the partnership would be liable, since the act was done in the course of the execution of the agency.

But, as a matter of fact, Harris did not transcend his authority. When he made the sale he had in his possession a map on which were marked the lands of the Drew Company, and among these the lands of the plaintiff figured; and he testifies that this map was given him by Drew for his guidance in making the sale. If so, he did not transgress his authority. Drew was not permitted to testify on the trial, as to whether he had, or not, given such a map to Harris, the court holding that the point was settled by a judgment on a rule taken on Drew early in the case to produce the map; which, it seems, had been left by Harris in the office of the Drew Co. Whether this ruling was correct or not, need not be considered, for if we assumed that Drew had testified and had denied most positively and circumstantially that he had given the map, we should accept the statement of Harris on the subject; and this for two reasons: first, that it accords with the attending circumstances of the case; and, secondly, that on the trial of the rule in question Drew testified that he did not "exactly remember" whether he had given any map at all to Harris; and, of course, this absence of recollection could not well be reconciled with a subsequent positive denial.

The want of knowledge on the part of a member of a firm of the tort of his co-partner will not be good ground for exemption from liability for such tort, if, as in this case, the tort was committed in the course of the partnership business, and in the name of and for the benefit of the partnership; and especially if the partnership profited by the transaction.

In combatting this proposition, counsel for defendant cite Addison on Torts, vol. 1, p. 667, as follows:

"One partner cannot drag another into a trespass without his previous consent, or without his subsequent concurrence. It must be shown, either by evidence before the transaction that they joined in committing the trespass, or by evidence afterwards that they concurred in and received the benefit of it."

If by this is meant merely what is said, namely, that as a general proposition one partner cannot drag his co-partners without their consent into every trespass which he may choose to indulge in, we have

nothing to say; but if it is meant to contradict the proposition laid down above, then we must call upon the author to cite his authorities. Two cases are referred to by him in his marginal notes in support of the text. One of these cases, Petrie vs. Lamont, we have not had access to; the other, Chester vs. Dickerson et als, 54 N. Y. 1, was cited either by mistake, or as a case *contra;* for it certainly does not support the text.

One of the members of a partnership between dealers in real estate poured petroleum upon a tract of land to induce plaintiff to believe that it was oil producing land, and sold the land to plaintiff as of that character, all without the knowledge of his co-partners: held, syllabus, as follows:

"Where a fraud is perpetrated by one of the members of such a partnership in the prosecution of a partnership enterprise, all the partners are liable, although the others had no connection with, knowledge of, or participation in the fraud."

Thus it is seen that the case does not support the text. But counsel cite one of our decisions, Allen, Nugent & Co. vs. Carey et als, 33 Ann. 1455, as supporting the text in question. On examination it will be found that that case is authority for nothing more than that a partner cannot bind the firm as security for the debt of himself or of a third person, outside of the course of the partnership business.

The proposition laid down by us above is well supported by authority.

In the Am. & Eng. of L. Vol. 17, p. 1067, we find the following:

"While the willful and malicious torts of a member of a firm are not usually within the scope of his employment, and consequently do not render his partners liable, yet if such an act is committed clearly and plainly for the benefit of all, and in the usual and ordinary prosecution of the partnership business, all are liable, notwithstanding the malicious motives of the partner committing the act." Vol. 17, p. 1067.

Story, treating the same subject, after discussing the liability as deduced from the maxim, *qui facit per alium facit per se,* goes on, as follows:

"The doctrine has been carried further; and the partnership has been held for libel which was published and sold by one partner in the course of the business of the firm, as, for example, by a printer or bookseller, one of the firm in that business. The same rule might

apply to cases of written slander, as by declaring a rival merchant a bankrupt, or a cheat, if written in the name, and as an act, of the firm. So, if breaches of the revenue laws by fraudulent importations, or smuggling, or entries at the customhouse, are committed by one of the firm in the course of the business thereof, all of the firm would be liable penally, as well as civilly, therefor." Story on Partnership, para. 166.

In a note on page 149 of Lindley on Partnership, Wentworth's Notes, we find the law on the subject stated, as follows:

"Partners are liable in civil actions upon the principle of agency for the fraudulent or malicious conduct of one of their members done without the knowledge of the others for the benefit of the partnership and within the scope of its business." Citing a long list of cases.

In the case of Stockwell vs. United States, 13 Wallace, 491, the defendants were sued as members of a partnership for double the value of certain shingles imported by the partnership without payment of import duties. The debt was by way of penalty for breach of the revenue laws. The fraud upon the government was the act of only one of the members of the firm, the other members had no knowledge of it; but the firm received the shingles, and sold them in due course of business. It was argued that the innocent members of the firm could not be charged with knowledge of the fraud of their associate. The court held that they were liable, and in the course of the opinion said:

"It is not seriously denied that in civil transactions a principal or a partnership is affected by a knowledge of the agent or co-partner, and that the knowledge of the agent is in law attributed to his principal, as well as that of the partner to all the members of the firm; nor is it much insisted that a principal, or a co-partner, is not liable for the tort of an agent, or co-partner, done without his knowledge or authority, in suits brought by third persons to recover compensation or indemnity for loss sustained in consequence of the tort; but it is argued that the rule does not apply to the case of suits for a penalty." And again:

"That as a general rule partners are liable to make indemnity for the tort of one of their number, committed by him in the course of the partnership business, is familiar doctrine. * * * * "The tortious act of the agent is the act of the principal, if done in the course of his agency, though not directly authorized. And this is emphatically true

when the principals, as in this case, have received and appropriated the benefit of the act."

The same rule obtains in the civil law. We translate from Fuzier Herman, 1384, as follows:

"The responsibility of the principal for the injury caused by his agent is not restricted to cases where the acts complained of came within the terms of the agent's authority; in order that the principal should be responsible it is sufficient that the act complained of should be connected with "(se rettache à)" the object of the agency, and that it should have been done in the course of the execution of the agency, (a l'occasion de son execution)."

Among the cases cited as illustrative of the acts for which the principal is thus held to be responsible, we find the following: Owner of a line of stage coaches held liable for damage caused by one of its drivers in diverting travelers from plaintiff's hotel. Bordeaux, 29 Juilliet, 1856. Railway company liable to government for smuggling done by one of the employees on its trains. Lyon, Ier Juilliet, 1872. All members of firm civilly liable for a forgery committed by one of the members in the course of the partnership business. Alger, 29 Mai, 1879. Lessees of a preserve civilly liable for murder of one of the sub-lessees by one of the special guards in the course of a hunting expedition in which the murderer was taking part in his capacity of guard. Paris, 19, Mai, 1874. These are, of course, the extreme cases, and are given here, not by way of approval, but merely to show how far the doctrine has been carried.

The liability of the innocent partners is not to be deduced entirely and exclusively from the principles of the law of agency. As stated by Judge Story, *supra,* it "has been carried." It derives also to some extent from the equity of making the loss fall, as between two innocent parties, on the one of the two who contributed to bring it about. By holding themselves out as members of the firm of Drew & Co., the defendants gave business standing to the cornern, thereby contributing to the tort. If it had not been for the prestige given by them to the firm, Maguire might not have dealt with Drew, or, a least, might have been more cautious. In fact Drew, standing by himself, might have been entitled to so little confidence that in dealing with him Maguire might have exposed himself to the imputation of bad faith. We do not wish to be understood as saying that such was the case, but only that such might have been the case. The record does not show what the reputation or business standing of Mr. Drew were. For all

we know they may have been very good. The fact that Maguire can find shelter behind the reputableness and responsibility which these innocent members have contributed to impart to the firm, shows that these members are to some extent responsible for the tort. The liability of the innocent members is also founded in part on motives of public policy. It would be dangerous to the community to allow a set of men to depredate upon the public under the shelter of an irresponsible associate; as might be done with impunity, if so-called innocent members of a firm might hold themselves out as members, and yet not be liable for the acts of their partner in matters within the scope of the partnership business.

We adopt the estimate of the lower court as to the quality of timber taken, namely, 661,000 feet. This we understand to be the number of feet, according to the measurement made for the sale of the timber, and for the settlement between Drew Co. and Maguire; but computed under Doyle's rule, as required by our law. Maguire having been in good faith, must pay according to the value at the stump, shown to have been 50 cents per thousand. For the other defendants, holding them to have been trespassers in bad faith, we must adopt a different basis.

In the case of Wooden Ware Co. vs. United States, 106, U. S. 432, the defendant who had in good faith bought 242 cords of wood from the trespasser, was sued for the value of the wood; and the question was whether his liability should be measured by the value of the timber on the ground after it had been felled, or at the place it had been removed to when sold. At the former place the value was 25 cents, at the latter place $3.50, per cord. The court held that this last value had to be taken at the proper measure. The case has been cited with approval and its doctrine enforced in a very large number of cases. See also Am. & Eng. Ency. of L., Vol. 26, p. 640, Note. We shall adopt the same basis.

The E. C. Drew Investment Company and its members are, therefore, liable for the timber when sold at Monroe, namely, $4.50 per thousand feet.

The defendants being held for a tort, their liability is *in solido*. Art. 2324 C. C.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be set aside; and it is now ordered adjudged and decreed that the plaintiff, the Guarantee Trust and Safe Deposit Com-

pany, have judgment against all of the defendants, namely, E. C. Drew Investment Company, Robert B. Blanks, John B. Parker, J. E. Reynolds, E. C. Drew, Lee Harris and Manning S. Maguire, in solido, for the sum of three hundred and thirty 50-100 dollars with legal interest from this date; and against all of said parties, except Manning S. Maguire, *in solido,* for the additional sum of two thousand six hundred and forty-three dollars, with legal interest thereon from this date; reserving to Manning S. Maguire his right to sue the proper parties for the sum herein decreed to be paid by him. The defendants to pay the cost in both courts.

BLANCHARD, J., concurs in the decree.

Rehearing refused.