HARDY, Judge.
This is an action in trespass in which plaintiff claims damages resulting from the alleged tortious cutting of timber by defendant. After trial the district judge rendered judgment in favor of plaintiff, fixing the measure of damages on the stumpage value of the timber cut and removed, from which judgment plaintiff has appealed.
Plaintiff was'the owner of an undivided one-half interest in a 160-acre tract of land in Catahoula Parish, the other undivided one-half interest being owned by her mother, Mrs. Susie Radford Coleman. Sometime in or about the early part of July, 1952, Mrs. Coleman, upon the solicitation of one George C. McGee, indicated an interest in selling the timber on the jointly owned tract of land. McGee contacted defendant, Omar H. Luttrell, who thereupon called upon Mrs. Coleman to discuss a purchase of the timber. The gist of this conversation was that defendant offered $12 per thousand board feet for the timber and was advised by Mrs. Coleman that this offer was agreeable to her but that he should contact her daughter. Thereupon Luttrell called upon Mrs. Havard ,at her home and the testimony discloses a serious conflict as to the effect of the ensuing conversation. Counsel for plaintiff throughout the trial consistently interposed objection to the attempts of defense to introduce, parol evidence for the purpose of establishing the sale of immovable property, which objections were overruled by the trial court. .
Mrs. Havard testified quite positively that she never reached any agreement with the defendant) but on the contrary advised him that before making any sale she wished tp personally inspect the timber.. This, apparently, was agreeable to the defendant and a few days later he and Mrs. Havard started,out in.separate automobiles to visit the site of the timber, Mrs. Havard being accompanied at the time by her fifteen year old son. However, upon reaching a point on a dirt road some short distance from the timber, a rain came up and Mrs. Havard was unwilling to attempt to reach the property in her car, whereupon all parties turned back. On this occasion there does not appear to have been any discussion about the matter except for the fact that Mrs. Havard reiterated her desire to make a personal inspection of the timber and stated that she would do so in the near future.
Defendant, while admitting that on the occasion of his first contact with Mrs. Hav-ard she asserted that she wished to make a personal inspection, nevertheless strenuously contended that an agreement had been reached for the sale of the timber, this testimony, of course, over objection of plaintiff’s counsel as above noted. Mrs. Hav-ard’s testimony was completely corroborated by her son, who was present on both of the occasions above related. The testimony of Mrs. Havard and her son is completely consistent and straightforward, and, we believe, *800 substantially preponderates in weight and value over the testimony of defendant.
Some two or three days after Mrs. Hav-ard’s effort to visit the property the defendant proceeded to enter upon the,same and to cut the hardwood timber therefrom to the extent of some twenty thousand board feet more or less.
There are other circumstances which bear upon the determination of the disputed issue and which properly are to be taken into consideration. ■ Some two weeks • after the cutting of the timber Mrs.' Havard engaged a timber cruiser for the purpose' of procuring his estimate of the 'standing timber. Upon visiting the property it'was discovered that the timber had already'been cut and removed. Mrs. Havard', ■ meeting defendant upon the .street, expressed to him her surprise and displeasure in what she regarded as the unauthorized cutting of the timber.
As we appreciáte the matters presented, there are two questions which must be determined. First, was there a valid sale of the timber by plaintiff to defendant; second, must defendant be held to have acted in moral and legal bad faith, or either, with respect to the cutting of the timber.
We have no hesitancy in answering the first question in the negative. Under the express provisions of Act. 188 of 1904, now LSA-R.S. 9:1103, standing timber is defined as immovable property and as such subject to all laws relative to immovables. Article 2275 of the LSA-Civil Code of Louisiana reads, in part, as follows:
“Every transfer of immovable property must be in writing * *
The remainder of the article to which reference is made provides for the enforcement of verbal sales of immovable property upon confession by the vendor under interrogation under oath, with which provision we are not here concerned.
We think it is clear that the objection interposed by counsel for plaintiff to parol testimony in the effort to prove the sale of the timber was good and should have been sustained. The trial court was in error in overruling such objections. However, although parol evidence was not properly admissible to prove the sale, it was admissible upon the question of bad faith, as we have held in another case just decided, Ella Henderson Timmons v. Lakeside Lumber Company, La.App., 68 So.2d 796.
Adverting to a consideration of the existence of bad faith, vel non, it is evident that defendant must be held in legal bad faith inasmuch as he had no valid title to ownership of the timber.
The remaining question necessitates a determination as to whether or not defendant acted in moral bad faith. From the facts established, as has been above set fprth, we are convinced defendant was in error in concluding that plaintiff had given permission for him to cut the timber. Defendant’s own testimony on this point is not convincing. After insisting that he had advised Mrs. Havard of his intention to cut the timber on the following Monday defendant was a,sked:
“Q. Did she tell you to go ahead and cut the timber?
and answered:
“Á. No, I don’t think she did.”
It is obvious that defendant’s action in proceeding to cut and remove the timber was unwarranted and unjustified. The test of good faith in these instances is not measured by the asserted belief of the party charged, but rather it is gauged by the knowledge and information available which would serve to place a reasonably prudent man on notice. The matter of moral and legal bad faith is thoroughly discussed in Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847. We are firmly of the opinion, after thorough examination of all the testimony, that there was nothing in the conduct nor in any statement of plaintiff which could reasonably have been considered as authorization, consent or permission for defendant’s action. Quite to the contrary we think the record is convincing to the effect that plaintiff gave no indication of any measure of acceptance of defend *801 ant’s offer. Accordingly, defendant’s hasty action in proceeding to the cutting and removal of the timber was without ground for any reasonable belief in his right so to do. It follows that defendant must be held in moral as well as legal bad faith.
Proceeding to a consideration of the measure of damages, we note that the district judge in his reasons for judgment limited plaintiff to the value of the trees at the stump, citing as authority Patureau v. McCardle, 44 La.Ann. 355, 10 So. 782. The only principle of law which is "enunciated in the cited case is to the effect that á joint owner has the right to cut and remove timber from community property without liability in the nature of tort or trespass to a co-proprietor. We point out that this holding appears to have been overruled by the Supreme Court in Cotten v. Christen, 110 La. 444, 34 So. 597, which expressly held that the owner of an undivided interest in timber; lands has no right to cut the timber without the consent of his co-owners and that such action is a trespass. However, we do not feel that either of these cases is sound authority or precedent in the instant case, for the reason that both of the cited cases were actions against the co-proprietors of the respective plaintiffs. It is not so in this case for here the action is not against plaintiff’s co-proprietor but against one who had no interest in the timber arising from ownership thereof.
It must be concluded that the measure of damages should properly be fixed upon the basis of the manufactured value of the timber without any allowance or deduction for the cost thereof.
The record evidences a stipulation between counsel for the parties litigant to the effect that the average manufactured value per thousand board feet of the 23,711 feet of logs when computed into board feet of lumber should be fixed at $82 per thousand. Under this agreement the total value amounts to the sum of $1,944.29. .
For the reasons assigned the judgment appealed from is amended by increasing the amount awarded in favor of plaintiff and against the defendant from the sum of $279.32 to the full sum of $1,944.29, with interest at the legal rate from the date of judicial demand until paid, and as amended the judgment is affirmed at the cost of defendant-appellee.