123 So.2d 865

A. A. TERRY et al.

v.

T. S. BUTLER et al.

No. 42729.

April 25, 1960.

On Rehearing Nov. 7, 1960.

Orleans v. Polmer, 1956, 231 La. 452, 91 So.2d 600.

Dale, Richardson & Dale, Vidalia, R. R. Reeves, Jr., Harrisburg, for plaintiffs, appellants and appellees.

Smith & Taliaferro, Wedon T. Smith, Jonesville, for defendants-appellees.

HAMITER, Justice.

Plaintiffs, Mrs. Hattie Terry Lanier, Mrs. Hazel Terry McMillin, Mrs. Mary Terry Alpin, Mrs. Hannah Terry Cantwell and Albert Terry, instituted this suit to recover damages of $23,186 for the alleged unlawful cutting and removal of undersized timber from their 220 acre tract of land situated in Catahoula Parish. Made defendants were T. S. Butler and T. A. McDougal.

After trial judgment was rendered in favor of the plaintiffs and against the defendants, in solido, in the amount of $1,250, together with legal interest from judicial demand and all costs. And from it all parties appealed, the appeal of the plaintiffs of course being limited to the question of quantum.

The record discloses that prior to August 11, 1950 one Newburg Sandifer approached Albert Terry (a plaintiff) to determine whether he and his co-owners would be interested in selling to a then undisclosed principal timber from their land. After conducting negotiations, in some of which the defendant McDougal took part, an agreement was reached; and at that time Terry (who was acting as the agent for his co-owners) was told that T. S. Butler would be the purchaser of the timber and that McDougal would perform the cutting operations.

Later, on August 11, 1950 and in conformity with the agreement, a deed was executed wherein the plaintiffs sold and conveyed to the defendant Butler all of the merchantable timber on the above mentioned 220 acre tract. The deed particularly provided: "It is contracted and agreed that the purchaser shall not cut or cause to be cut any pine smaller than 10″ in diameter, 12″ from the ground; or any hardwood timber less than 12″ in diameter, 12″ from the ground." But in violation of such provision McDougal, in undertaking the cutting operations through an agent, removed a number of undersized trees and converted them into pulp wood which he sold to the International Paper Company and delivered to the latter's mill in Springhill, Louisiana, where it was used in mak-

ing lap pulp and other more refined wood-paper products.

Following completion of the cutting operations plaintiffs commenced this litigation. In their original and supplemental petitions they alleged that 719 trees of less than 10″ in diameter, 12″ from the ground, had been removed by Butler and McDougal. Plaintiffs further alleged that such defendants were in moral bad faith in taking the undersized trees and that, therefore, they were entitled to recover the manufactured value of the timber without any deduction for the manufacturing cost.

As shown by his written reasons for the judgment rendered the district judge found that both of the defendants were in moral, as well as legal, bad faith. He further determined that some 700 undersized trees had been cut and thereafter converted into 100 cords of pulp wood which had a value of $12.50 per cord delivered to the International Paper Company in Springhill. And he fixed the damages to which plaintiffs were entitled as the value of the delivered pulp wood without any deductions for the expenses incurred by the defendants in converting the standing timber into pulp wood and in transporting it to the mill.

The defendant Butler complains here that the district court erred in holding him liable in any amount, his position on this point being that he was not the actual purchaser of the timber from plaintiffs. Al-ternatively, he contends that if there is liability on his part the damages awarded should be only for the stumpage value of the timber in question inasmuch as he was in neither legal nor moral bad faith. Mc-Dougal, while conceding his legal bad faith, maintains that the trial judge erred in finding him in moral bad faith. And both defendants urge that, in any event, the damages awarded were excessive because only 485 undersized trees were cut and removed.

██ We agree with the district judge's conclusion that there is liability on the part of Butler. It is true that he testified (over the repeated objections of plaintiffs' counsel) that McDougal was the actual and sole purchaser of the timber; that the latter borrowed money from him to make the purchase; and that, through an oral agreement with McDougal, he had the title placed in his name merely to secure the payment of such loan, as well as the payment of another indebtedness of McDougal with the LaSalle State Bank of which he was the president. But clearly that testimony was inadmissible, and it cannot be considered, for the purpose of varying the written contract executed by Butler with plaintiffs, particularly since it is not shown that the latter had any knowledge of the mentioned oral agreement. Insofar as these plaintiffs are concerned Butler was the principal, with McDougal acting as his agent, in the purchasing and cutting of the timber.

With reference to the question of the moral bad faith of both defendants the district judge observed: " * * * defendants had been requested to desist but they continued with their illegal cutting until some one hundred cords of pulpwood from some seven hundred small trees had been illegally taken from this land of the plaintiffs.

■ "From the evidence adduced upon the trial of this suit, it is certainly apparent that the defendants were acting in moral as well as in legal bad faith in the cutting of this undersized timber from plaintiffs' lands." The record amply sustains this observation. The evidence preponderately shows that on at least two occasions, when not more than three or four acres of the 220 acres had been cut, both McDougal and Butler were notified that undersized timber was being removed. Nevertheless, neither took any steps to insure the cessation of such activity.

■ As to their contention that the district court was in error in concluding that some 700 undersized trees were cut, defendants point out that their witnesses testified that only 485 trees were removed. On the other hand, however, the witnesses for plaintiffs stated that they had gone over the entire property, measured the stumps, and found 719 undersized trees cut. In this connection they said that, while making their inspection, they marked each undersized stump so that it would not be counted twice. Thus, there was an obvious conflict in the evidence respecting the number of undersized trees removed. And in resolving it the judge accepted the testimony of plaintiffs' witnesses. We cannot say that, in so doing, he manifestly erred, especially since it appears that the inspection by such witnesses was carefully and accurately made.

■ Having concluded that the defendants were in moral bad faith we must determine the amount of damages to which the plaintiffs are entitled, they having appealed from the district court's award that was predicated on the value of the pulp wood as converted by defendants and delivered to the International Paper Company Mill.

Complaining that the award was improperly based they, to quote from the brief of their counsel, say: "The manufactured product of small trees which are not converted to lumber, would be the product to which they are converted. The undersize trees from the Terry property were taken to International Paper Company's Springhill Mill, at Springhill, Louisiana, and there manufactured into unbleached and bleached paper board. * * *" And they take the position that they are entitled to the value of the products into which the timber was ultimately manufactured (lap pulp and paper board) through the efforts and expenditures of the innocent purchaser Inter-

national Paper Company, this without any deduction for costs incurred by the latter or by the defendants.

The numerous decisions cited by plaintiffs, all of which we have carefully considered, do not support their position. Rather, they sustain the basis for determining value that was used by the trial judge.

Thus, in Kennedy v. Perry Timber Company, 219 La. 264, 52 So.2d 847, 851 (primarily relied on by plaintiffs), this court said: "The measure of damages allowable for the unlawful cutting of timber is well settled in this State. If the trespass has been reckless and willful, the trespasser is said to be guilty of moral bad faith and is liable for the converted value of the timber without allowance or deduction for costs and expenses. In cases where the trespasser believes himself to be owner but should have known otherwise, either from information available to him or other ascertainable facts which would have placed a reasonably prudent man on notice, he is held to be in legal bad faith and the actual expenses *incurred by him in converting the timber* are to be deducted in assessing the damages. * * *" While in the Kennedy case we did not spell out what was meant by the term "converted value" used in referring to the trespasser in moral bad faith, the remainder of the quoted language clearly shows that the court intended that the owner would be entitled to the value of the product *as converted by the trespasser.*

Moreover, the result reached in the case indicates such an intention. Therein, we specifically pointed out that "Simmons (one of the defendants) wantonly and recklessly cut and removed 1810 trees from plaintiff's land, converted them into poles and pilings, which he sold to Perry Timber Company (another defendant) for $3416.35;" and we affirmed a damage award against those defendants for the named amount. (Italics ours.)

Again, in State v. F. B. Williams Cypress Company, Limited, 131 La. 62, 58 So. 1033, 1036 (cited in the Kennedy decision and relied on herein by plaintiffs), we observed: "* * * In the instant case, as in the case of Eastman v. Harris, supra, the ends of justice are subserved by holding that the owner is entitled to the profit resulting from the *change made* in the form or condition of the property *by the possessor in legal bad faith,* and that the latter cannot reasonably expect anything more than the reimbursement of the expense incurred in making the change. * * *" There, the *wrongdoer* was in legal, but not in moral, bad faith; consequently, he was condemned for the value of the timber in the state into which he converted it, less *his* converting expenses. (Italics ours.)

The same principle, stated in a different way, was expressed thusly in State v. Jefferson Island Salt Mining Company, Inc., 183 La. 304, 163 So. 145, 167 (cited in the Kennedy case and by plaintiffs herein), the

court having found that the trespasser there was in moral bad faith: " 'The measure of damages for the reckless, willful, or intentional taking of ore or timber from the land of another without right is the enhanced value of the ore or timber *when it is finally converted to the use of the trespasser, without allowance to him* for the labor bestowed or expense incurred in removing and preparing it for market.' * * " (Italics ours.)

We recognize, of course, that in some decisions cited by plaintiffs the court has used the term "manufactured value" in assessing damages for timber wrongfully taken. But obviously it was so employed for the reason that the timber had been changed *through the efforts and expense of the trespasser* into products more refined than mere logs, poles or pulp wood.

For example, in Coignet v. Louisiana Cypress Lumber Company, Limited, 177 La. 1023, 150 So. 6, 9, the court said: "As we appreciate the law of this state, the measure of damages due by a trespasser must be determined by the value of the timber and its manufactured product at the time the timber is cut *and the lumber is sold by the trespasser.* Allen v. Frank Janes Co., 142 La. 1056, 78 So. 115; * * *." (Italics ours.)

Incidentally, the following observation is found in the mentioned Allen case: "In measuring the damages due by a trespasser for cutting and removing timber, this court has made a distinction between legal and moral bad faith. *In both cases the value of the timber is fixed at the amount at which it was sold by the trespasser;* but in the one case *the expenses incurred by the trespasser* are allowed to be deducted, whereas in the other, they are not. * * *". [142 La. 1056, 78 So. 116.] (Italics ours.)

In sum, we have found no decision in the jurisprudence of this state wherein damages were awarded in excess of the value of the timber as converted and sold by the wrongdoer.

In the instant cause the judge awarded damages for only 700 undersized trees removed, whereas the evidence preponderately shows that those taken numbered 719 which produced a total of 102.7 cords of pulp wood. To the extent of this difference the award will have to be increased.

For the reasons assigned the judgment of the district court is amended by increasing the award in favor of plaintiffs from $1,250 to $1,283.75; and, as thus amended, it is affirmed. The costs of this court shall be paid in the proportion of one-half by plaintiffs and one-half by the defendants.

HAWTHORNE, Justice (concurring in part and dissenting in part).

I am in full accord with the majority holding that the defendants are in moral bad faith, but I think the damages awarded are grossly inadequate.

Due to the influx into this state of the paper industry and other enterprises using forest products in manufacture, the growing of pine timber has become a large source of income to the people in the timbered sections of our state. In fact, extensive areas which were formerly planted to cotton, corn, and other crops are now being converted, as an investment, to the growing of pine timber. The landowners who have planted pine seedlings must patrol their lands, guard against fires, clear out undesirable growth from time to time, thin the trees, etc. In short, the growing of merchantable timber, which is now a big business in this state, is nothing more than the growing of a crop, a crop of merchantable timber. Although a stand of pine seedlings or young pine trees does not in its early stages have much value, the cost of seeding, planting, care, and supervision may be considerable. Thus I think the time has come to regard growing pine timber as a merchantable crop like cotton, corn, or potatoes; and when a crop of pine timber is destroyed or damaged by one found to be in bad faith before it reaches the stage when it can be marketed as merchantable timber, the owner's damages should be computed and determined in the same manner as damages are computed to other young crops in such a case. See Rhymes v. Guidry, La.App., 84 So.2d 634; Watkins v. Gulf Refining Co., 206 La.

942, 20 So.2d 273; Dubois v. Phillips Petroleum Co., 221 La. 161, 59 So.2d 107.

I do not think that the application of such a rule in the computation of damages to growing pine timber can be objectionable on the ground that the damages would be speculative, for, as disclosed by the record here, one with experience in forestry can examine a stand of young pine timber and calculate to a very fine point the yield at any given stage of maturity.

If the record in this case is not in a condition to permit calculation of the amount of damages under the rule applicable to damages to other young crops, then I think the case should be remanded for further evidence. An award based on the value of pulpwood per cord is inequitable since it is far below the amount the owner would be entitled to recover if growing timber is considered a crop which in its matured state is merchantable timber.

## On Rehearing

FOURNET, Chief Justice.

We granted a rehearing in this case on the application of plaintiffs-appellants, limited however to the question of quantum that they are entitled to recover for a certain number of trees cut and removed from their property by the defendants-appellees in violation of the contract between the parties and converted into pulpwood which was sold and delivered to the International

Paper Company at the rate of $12.50 per cord.[1]

When the case was originally before us we concluded, as did the trial judge, that defendants were in moral as well as legal bad faith. Following the well-established jurisprudence of this court in such cases we allowed the plaintiffs the value of the timber converted into pulpwood without deduction or allowance for costs and expenses.[2]

Plaintiffs' application for rehearing prays that our judgment be amended (1) by increasing the award to an amount equal to the manufactured value of the young trees into lap pulp without deducting the cost of manufacture or (2) in the alternative by increasing the award of damages to an amount equal to the value of the young trees taken at their first stage of maturity as lumber without deducting the cost of manufacture, or (3) in the further alternative by increasing the award of damages to the value of the young trees figured at the first stage of maturity as sawlogs, delivered at the mill without deducting the cost of cutting and delivery.

▬▬ In support of the first contention, that is, that the award of damages for the conversion of the timber in moral bad faith should not be the price for which the defendants sold it to International Paper Company but rather its value after being converted into pulpboard or lap pulp, plaintiffs rely on cases where the trespasser in moral bad faith converted the timber so appropriated into lumber, cross-ties, staves, or the like, with the exception of the case of Havard v. Luttrell, 68 So.2d 798, a Court of Appeals case, in which the point is not made clear whether the timber was sold to a third party, as in the case at bar, or was actually converted into lumber by the trespasser himself. Consequently these cases are not controlling here.

Counsel for plaintiffs in brief and orally on rehearing strenuously argued that damages should not be limited to the amount received by the trespasser for property taken in moral and legal bad faith, contending

---

1. Plaintiffs-appellants sold to defendants-appellees all the merchantable timber on a certain tract of land with the restriction that the purchaser "shall not cut any pine smaller than 10 inches in diameter, 12 inches from the ground or any hardwood timber less than 12 inches in diameter, 12 inches from the ground." Violation of this restriction, after notice, gave rise to this suit by the landowners against defendants for damages for the unlawful cutting and removal of undersized timber.

2. Bolles Wooden Ware Co. v. United States, 106 U.S. 432, 1 S.Ct. 398, 27 L. Ed. 230; Guarantee Trust & Safe Deposit Co. v. E. C. Drew Inv. Co. et al., 107 La. 251, 31 So. 736; St. Paul v. Louisiana Cypress Lumber Co., 116 La. 585, 40 So. 906; State v. F. B. Williams Cypress Co., 131 La. 62, 58 So. 1033; State v. Jefferson Island Salt Mining Co., 183 La. 304, 163 So. 145; Kennedy v. Perry Timber Co., 219 La. 264, 52 So. 2d 847; Coignet et al. v. Louisiana Cypress Lumber Co., Ltd., 177 La. 1023, 150 So. 6; Allen v. Frank Janes Co., Ltd., 142 La. 1056, 78 So. 115.

that such a limitation allows the business ability of the trespasser to become the criterion for damage assessment. He calls to our attention that this rule was laid down more than half a century ago, when the logger and the sawmill owner were one and the same but he points out that modern day specialization separates the logger from the sawmill owner; consequently the law should evolve with the times and in such cases the award should be the same, i. e. the value of the timber manufactured into lumber. Otherwise the owner of standing timber is subject to the will of an unscrupulous trespasser.

What counsel has overlooked is that, unless specifically provided for, under our system of law exemplary damages are not allowed. The rationale for the rule allowing an award equal to the manufactured or converted value of the property tortiously taken, without reimbursement to the trespasser or wrongdoer for expenses incurred in the manufacture or conversion, stems from the right of the owner to recover his property which has been illegally taken from him in whatever altered form it may have taken.

It may be well to point out that there is no intimation that the property was not sold for its fair market value in the case at bar and if, as suggested by counsel, there should be any unscrupulous manipulations to the disadvantage of the owner, the court, upon proper showing made, would readily make proper allowances.

▮ The two alternative contentions of plaintiff are based on counsel's theory that inasmuch as the Constitution of the State of Louisiana declares that "Timber, other than virgin timber, shall be recognized as a growing crop," [3] the measure of damages for the wrongful and wilful cutting of young and yet unmatured trees should be computed and determined as damages to other crops.

It is to be noted that the provision of the Constitution relied on by appellants deals with Revenue and Taxation and paragraph 5 is entitled: "Severance tax on timber." Read in context the designation of timber as a growing crop is readily recognizable as a connotation for tax purposes only, i. e. "on trees and timber severed from the soil or water." There is no declared nor implied intention that this section shall change

3. Louisiana Constitution, Art. 10, Sec. 1, paragraph 5: "Timber, other than virgin timber, shall be recognized as a growing crop. A severance tax on trees and timber severed from the soil or water is hereby levied at the rate of 2¼% on all forms of timber except pulpwood, and 5% for pulpwood, of the then current average stumpage market value of such timber, to be determined annually on the second Monday of January by the Louisiana Forestry Commission and the Louisiana Tax Commission, such tax to be collected in accordance with the laws for the collection of severance taxes on natural resources, existing at the time of collection."

the long-established rule of law evolved by the jurisprudence for determining the amount of damages to be awarded for the wrongful conversion of growing timber.

While we recognize that in this day and time, because of the influx into this state of manufactories and other enterprises using forest products, extensive areas which were formerly planted to cotton, corn and other crops, are now being converted to the growing of pine timber we are unable to adopt counsel's theory without doing violence to the canons and rules by which courts are bound in fixing damages. "We can only rest our judgment ' * * * on the basis of certainty, and not on mere conjecture and speculation.'" Ferguson v. Britt, 191 La. 371, 185 So. 287, 288, and cases therein cited. We feel that it is in the province of the legislature and not of the courts to designate young trees as a growing crop if it so desires, and such legislation, if adopted for the purpose of granting redress for damages for the wrongful conversion or damage to such crops, would necessarily set up some standard by which to determine future value.

Until some yardstick has been adopted whereby the courts can measure such damages with consistency and fairness we must continue to use the established methods.

For the reasons assigned our original decree is re-instated and made the final judgment of this court.

HAWTHORNE, Justice (dissenting).

I cannot subscribe to any rule that limits the amount of recovery by the owner to the amount received by one who has taken his property in legal or moral bad faith. Such a rule permits the wrongdoer to fix the quantum of damages which the owner can recover by the use which he makes of the property. For example, under such a rule the thief who steals virgin merchantable timber of a size suitable for manufacture into lumber can, by cutting the timber so stolen into firewood and selling it as such at a fair market value, limit the amount of recovery to the price received by him.

I am still of the view that the damages awarded in this case are inadequate for the reasons given in my concurring-dissenting opinion on original hearing.

HAMLIN, Justice (dissenting).

I am compelled to disagree with the majority opinion.

Try as I will, I cannot agree with the conclusion that timber is recognized as a growing crop only for the purpose of taxation and not recognized as such when an innocent owner is deprived of his ownership and possession by another who is guilty of legal and moral bad faith.

It is well to remember that crops existed and were known as crops before Constitutions were even thought of. They existed by endowment of the Creator, and their

status is merely reaffirmed by the passage of Constitutions and laws.

It is my view that plaintiffs are entitled to have this Court consider their contention that they are entitled to recover not less than $7,453.53, which amount, they claim, is equal to the manufactured value of the young trees unlawfully taken as lap pulp at the paper mill without deducting the cost of manufacture, and which amount, they further assert, is exactly comparable to the lumber value for the wrongful taking of mature trees (all of which, they contend, is amply supported by the testimony of the officials in charge of the International Paper Company's Springhill Mill).

I respectfully dissent.