306 So.2d 331 (1975)
Eleanor B. MARSHALL, Plaintiff-Appellant,
v.
Penn J. ARMAND and George W. Brown, Defendants-Appellees.
No. 4850.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1975.
Rehearing Denied February 5, 1975.
*332 Donald R. Wilson, Marksville, for plaintiff-appellant.
Riddle & Bennett by Darrell Ryland, Marksville, for defendants-appellees.
Before FRUGÉ, DOMENGEAUX, and WATSON, JJ.
DOMENGEAUX, Judge.
This is a suit to collect on a check issued by the defendants to the plaintiff. From a judgment dismissing plaintiff's demands, she has appealed.
On April 26, 1973, George W. Brown (a Pride, Louisiana, resident) purchased from Eleanor B. Marshall, the timber rights on approximately 98 acres of land owned by the plaintiff in Avoyelles Parish, Louisiana. On said date, a check in the sum of $1,500.00 was issued to the plaintiff by Brown and his partner, Penn J. Armand.[1] *333 Although the plaintiff was a resident of New Orleans, the transaction took place at the home of Eleanor Marshall's mother, in Avoyelles Parish near the site of the timber.
The timber deed included a provision whereby the buyer had until December 31, 1973, to cut the timber, after which date the remaining uncut timber would revert back to the former owner. It was also provided in the deed that the "Seller grants to buyer such easements over and above said lands as may [be] convenient or necessary to cut and remove the timber hereunder."
The tract of land which encompassed the timber in the sale was enclosed by substantial fencing (three strands of barbed wire with a three foot hog wire net at the bottom, all nailed to creosote posts). The only entrance to the property was a heavy padlocked gate.
Plaintiff testified that on the date the timber contract was signed she advised Brown that the gate was locked, that the people who leased the land for pasture purposes had a key, and that she also had a key, which had been misplaced, but that she would find it and Brown could return for it on the following Monday. Undisputedly, Brown did not pick up the key on this latter date.
Instead Brown testified that on the day of the sale he was assured by the defendant that he would get a key to the gate. He denied that plaintiff told him to return on Monday for the key. He also stated that on this date he deposited some $5,000.00 to the account on which the aforementioned check was to be drawn. Brown testified that in the following months he called the plaintiff at least two times to ask for a key and each time she answered by seeking to be released from the contract. He further indicated that on one occasion he went to the property to try to get in and the gate was locked and posted signs were up.
Plaintiff denies that the defendant ever communicated with her by telephone to request a key, after the April 26th sale. She testified, however, that on May 2nd she advised the lessees of the land, Lance and Eldred Coco, that she had sold the timber to Brown and that he was to be given access to remove the timber at any time. In addition she stated that she told Elam Rachal, another holder of a key to the gate, that any time Brown or Armand wanted a key to look over the timber or remove it, he was to give it to them and notify the plaintiff as soon as cutting began. This latter conversation was confirmed by testimony of Rachal. The record, however, indicates that the communication to the Coco brothers took place on the following November 12th (rather than May 2nd). Neither the tenants or Rachal ever communicated to Brown that they had keys to the aforementioned gate leading into the property.
During the same period plaintiff and defendants were also involved in another business transaction and were in communication with each other. The defendants were attempting to purchase certain lands belonging to the succession of plaintiff's mother for the sum of $40,000.00. On May 11th[2] the parties met with plaintiff's Marksville attorney and signed an option to buy the succession property, for which the defendants gave the plaintiff a check for $1,000.00.
At this meeting plaintiff alleges that she asked the defendantBrown why he had not come for the key and he answered "Oh, that doesn't matter, we can get it any time." She also avers that she again told the defendant that he could get the key from Eldred Coco or Elam Rachal. She, however, does admit that she did not bring the defendant the key which was in her possession and that she requested that the *334 timber contract be cancelled for various reasons, with the defendant allegedly declining.
Following this meeting, the plaintiff deposited the $1,500.00 timber check on August 15th (almost four months after its issuance) and it was subsequently returned with an indication that there was insufficient funds in the account on which it was drawn.
On August 24th the deal to sell the succession property was closed and a check was issued to the plaintiff in the sum of $39,000.00. This check was deposited on that date, subsequently clearing the bank without incidence.
Brown testified that during this latter meeting he again asked for the gate keys to the timber property, and plaintiff declined, once again seeking to call off the deal. Brown stated that he again refused because he wanted to cut the timber. He also indicated that prior to this time it had actually been too wet to cut the timber because of heavy rains and high water, which is not disputed.
Armand also testified that Brown asked for the keys at the August 24th meeting and that plaintiff declined saying she wanted to buy back her timber. He further indicated that it would have taken about four months to cut the timber because of the previous extremely wet winter and spring.
Plaintiff on the other hand denies that at the August 24th meeting any discussion took place about access to the property or the keys. She admits, however, at this time that she accepted the $39,000.00 succession property check without even mentioning that the $1,500.00 timber check had been returned "NSF".
On the following November 12th, the plaintiff wrote the aforementioned letter to the Coco brothers. In addition she drafted a letter to the defendant Brown in which she indicated that she had spoken to Brown on two occasions about releasing her from the contract, but when Brown was unwilling to do so she deposited the $1,500.00 check. The letter also stated that the check had been returned twice because of insufficient funds on August 15th and September 27th. Plaintiff later deposited the check a third time, the same being returned "NSF" on November 23rd.
After receipt of this letter, defendant alleges he called the plaintiff in the presence of his partner, Armand, again to request the key, for which he had been waiting over four months. Allegedly she responded as before, asking to be let out of the contract. This conversation was denied by the plaintiff but corroborated by Armand's testimony.
Shortly thereafter, on or before November 28th Brown called Armand and requested that he contact plaintiff's attorney for a key. He also informed Armand to stop payment on the $1,500.00 check and tell the attorney that if he got a key and delivered it to Brown, that the latter would pay for the timber in cash. Armand conveyed this information to plaintiff's attorney who allegedly stated he would do what he could to get a key. Neither Brown or Armand returned to the attorney's office. Both Brown and Armand indicated it would have been impossible on this late date to remove the timber before the December 31st deadline.
On the basis of the aforementioned testimony, the trial judge, in ruling for the defendant, opined essentially that it would have been simple enough for the plaintiff to have brought the defendant Brown her key (or a duplicate thereof) on the May 11th or August 15th meeting, or at least mailed one to the defendant. He further found as a fact that defendant was never furnished a key, that this obligation rested on the plaintiff, and that defendant had a right to expect the vendor to provide access to her land. The district judge concluded that despite the availability of other means which the defendant might have *335 taken, under the facts presented defendant should not be compelled to pay the check. We concur.
Sale of rights to standing timber is considered under the jurisprudence of this state as the sale of an immovable and is thus governed by the Civil Code Articles on immovables. Martin Timber Co. v. Jean Lumber Co., 227 La. 894, 80 So.2d 855 (1955); Bagents v. Crowell Long Leaf Lumber Co., 20 So.2d 641 (La.App. 1st Cir. 1945).
Under Civil Code Art. 2479: "The law considers the tradition or delivery of immovables, as always accompanying the public act, which transfers the property. Every obstacle which the seller afterwards interposes to prevent the taking of corporal possession by the buyer, is considered as a trespass."
Relying on the above mentioned legal principles, the plaintiff argues that delivery of the standing timber herein took place on April 26, 1973, the date the timber deed was signed and passed, and that at that time plaintiff had fulfilled her legal obligations to the defendants and the purchase price was therefore due. She further contends that the aforementioned provision in the deed concerning easements over the lands was merely the granting of a servitude of passage, which was accessory to the contract, and that any problems such as obstruction thereof in no way affected the validity of the perfected sale.
Defendant, on the other hand, argues in effect that plaintiff breached the contract provisions obligating the vendor to deliver the premises in addition to providing ingress and egress over the timber land and as a result that the purchase price was not due and owing. It is contended that under the circumstances herein plaintiff's obligation to deliver included delivery of a key to the enclosed premises. As aforementioned, the trial judge apparently agreed with these contentions.
At the outset, we must consider the peculiar type of sale contract we are dealing with and the obligations necessarily resulting therefrom. Granted, this is a sale of an immovable; however, timber contracts also usually provide a condition such as the type herein, where the buyer will only have a certain limited period during which he can exercise his real right to this immovable and cut the timber. After this limited period passes, the timber reverts back to the former owner.
Likewise, it necessarily follows that in order to exercise this right the plaintiff must have ready access to the vendor's property where the timber is located. The obligation on the vendor to provide access was clearly stated in the timber deed, i. e. "seller grants to buyer such easements over and above said lands as may [be] convenient or necessary to cut and remove the timber hereunder".
Although this right of ingress and egress may be termed a servitude of passage or right of way which is an appurtenance to the property sale, we opine that any such sale implies (even without it being expressly stated) a warranty against acts of the vendor that would prevent or interfere with the full enjoyment of the thing sold. See: C.C. Art. 1903, Bruning v. New Orleans Canal and Banking Co., 12 La.Ann. 541 (1857). This principle seems especially applicable where exercise of the rights of the buyer are limited to a certain period in the contract.
Under C.C. Art. 2475 "The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells." See also C.C. Art. 2477, 2491. Warranty has as its object the peaceable possession of the thing in the buyer. C.C. Art. 2476. A breach of this implied warranty or non-delivery (under C.C. 2485) would have allowed a recision of the contract.
*336 Under either principle we feel the defendant is relieved from paying the $1,500.00 check.
Although a fictitious delivery of immovables takes place upon passage of the sale, the jurisprudence interpreting C. C. Art. 2479 has noted certain exceptions to this principle such as where there is a legal impediment to delivery at the time the act of sale is passed. Emerson v. Fox, 3 La. 178 (1831); see also Thibodeaux v. Thomasson, 17 La. 353 (1841); see also International Paper Co. v. Rivers, 35 So.2d 677 (La.App. 2nd Cir. 1948). Likewise we feel the rule does not apply when an obstacle or impediment exists such as under the facts herein, simply that plaintiff did not originally want to go through with the timber sale and as a result made no effort (and in fact refused) to deliver to the defendants the keys to the property despite numerous and continued requests. Thereafter, once she was finally convinced the defendant would not succumb to her requests to be released from the deal, she deposited the check and wrote the aforementioned November 12th letter to the defendant. At this late time the defendant could not have possibly cut the timber before the end of the year deadline. Contracts must be performed in good faith. C.C. Art. 1901.
In the same respect, plaintiff breached the warranty to provide access to the lands when she continuously refused to give a key to the defendant.
Under the facts, we feel, as did the trial judge, that defendants do not owe plaintiff the amount of the check since they were prevented by the plaintiff from exercising and performing their rights granted in the contract. Although plaintiff argues that defendants merely chose not to exercise their right to remove the timber, this contention is clearly not supported by the evidence.
Plaintiff contends that defendants should have pursued legal remedies other than stopping payment on the timber check, such as mandatory injunction or suit for damages. Despite the availability of other remedies to defendants we are not swayed from our conclusions herein.
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant's costs.
Affirmed.
WATSON, J., concurs and assigns reasons.
WATSON, Judge (concurring):
I concur reluctantly with the result reached by the majority. The contention that plaintifff precluded the defendants from entering the property by failing to furnish them a key is not impressive. It appears to me that the defendants never made a real effort to go on the property and cut the timber.
In Bagents v. Crowell Long Leaf Lumber Company, 20 So.2d 641 (La.App. 1 Cir. 1945), the court pointed out that when one claimed the ownership of timber rights and was refused entry upon the land by the one occupying it, the timber owner could either go into court and assert ownership or seek a mandatory injunction.
The majority in effect holds that defendants are not required to pay for the timber rights purchased because plaintiff did not take steps to assure them access to the land. The trial court was apparently impressed with the testimony of the defendants and resolved the central issues in their favor. The majority affirms this decision. While I have reservations about the result as a matter of law, it is equitable. Therefore, I respectfully concur.
NOTES
[1] Although Armand was actually not a party to the transaction, the check was drawn on a joint account in both Armand's and Brown's name and as a result both signed the check for the timber deal.
[2] DefendantBrown was not explicitly questioned in regard to the May 11th meeting.