315 So.2d 805 (1975)
Dorothy and Antolne CONQUES, Plaintiffs-Appellants,
v.
J. W. COLEMAN et al., Defendants-Appellees.
No. 5025.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1975.
*806 Charles B. Bice, Bice & Wiley, Winnfield, for plaintiffs-appellants.
Ward-Steinman & Karst by Irving Ward-Steinman, Alexandria, for defendants-appellees.
Before CULPEPPER, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This suit was filed by the plaintiffs alleging the unlawful trespass and removal of some 11,700 feet of pine saw logs from their land by the defendant, J. W. Coleman. Also brought in as defendant was Hunt Lumber Company, Inc., of Ruston, Louisiana, who subsequently filed, in the alternative, a third party action against J. W. Coleman for any damages for which it might be held liable. From a judgment dismissing plaintiff's demands they have appealed.
The facts show that some time during the latter part of January, or early part of February, 1973, the plaintiffMrs. Dorothy Conques (with the authorization of her husband who was in California) entered into an oral contract with the defendant J. W. Coleman, under which Coleman was to cut the pulpwood timber from a tract of land, owned by the plaintiffs, near Dry Prong, Grant Parish, Louisiana, paying the plaintiffs the sum of $5.00 per cord.
DefendantColeman also contends that following the above mentioned original agreement, he entered into a second oral contract with Mrs. Conques for the purchase of the pine saw log timber on the same tract, agreeing to pay plaintiffs the sum of $55.00 per thousand feet. Plaintiff denied that she made any such agreement and contended that they only agreed that Coleman would cut the saw log timber for her and thereafter haul and stack same near the road, for which she would pay Coleman the sum of $1.50 per log. The daughter of Mrs. Conques corroborated the plaintiff's version of the agreement, while testimony by Coleman's son supported his father's account of what took place.
Notwithstanding the conflicting versions of what was actually agreed upon, the record indicates the defendant subsequently did in fact cut the pulpwood and saw log timber from plaintiff's property. The testimony also reflects that Mrs. Conques was fully aware defendant was conducting the cutting operations. In early February Mrs. Conques began to receive checks for the pulpwood, as it was cut. On March 30, 1973, Coleman delivered and sold approximately 11,700 feet of pine saw logs to the defendantHunt Lumber Company, Inc. for the price of $1,355.85. Coleman was paid $115 per thousand feet of timber delivered. On or about April 26th the defendant Coleman tendered to Mrs. Conques a check for $648.45, representing the above mentioned 11,700 feet of timber cut and sold at $55.00 per thousand feet. On this occasion she was also given a check for pulpwood, which is not in dispute. Dorothy Conques admits receipt of the checks and knowledge that they were for the saw log timber as well as the pulpwood. At the time the checks were delivered plaintiff admittedly made no comment to the defendant about his cutting and selling the logs, nor concerning the alleged $1.50 per log she was supposed to pay the defendant. She contends, however, that she did not examine the checks until that night, at which time she called Coleman, allegedly telling him he had no authority to cut and sell the timber. Defendant, in turn, testified as to receiving the call but stated that Mrs. Conques contended that he had agreed to *807 pay her $85.00 rather than $55.00 a thousand feet. Coleman allegedly answered, informing the plaintiff essentially that such was impossible because he could not have paid his labor, hauling costs, etc., at that price and made any profit. He further indicated in testimony that the price which he offered the plaintiff was based upon a price of $90.00 per thousand feet, quoted to him at the time by a lumber company. Coleman in turn was to pay $15.00 a thousand feet to a second party to haul the logs from plaintiffs' land to a lumber mill. The remaining $20.00 per thousand was to cover his own cost and for a marginal profit. Defendant testified that timber prices thereafter rose and as a result he sold the timber to Hunt Lumber Company which agreed to pay $115.00 per thousand.
Plaintiff subsequently filed suit seeking $1,355.85 in damages, as the market value of the timber allegedly removed without authorization, plus damages for mental pain, anguish, inconvenience, and loss of natural beauty to the land.
Subsequent to trial the district judge, in written reasons, conclused essentially that although he believed the defendant's version of the facts, nevertheless, the oral sale of the timber was without legal effect and defendant was therefore liable for any damages sustained as a result of the unlawful cutting. He concluded, however, that plaintiffs had actually sustained no damages which they had not already been compensated for.
The plaintiff appealed, specifying as error the factual finding of the trial court that Coleman was in good faith when he cut and sold the timber and contended that damages should have been awarded for the manufactured value of the timber, without deduction for expenses of manufacturing. It was further alleged that the usage of parol evidence to show the defendant's good or bad faith in this case was contrary to Civil Code Article 2275.
Under the express provisions of LSA R.S. 9:1103, standing timber is defined as immovable property subject to all of the laws relative to immovables. See also Marshall v. Armand, 306 So.2d 331 (La. App. 3rd Cir. 1975).
LSA C.C. Articles 2275 and 2276 provide the following:
"Art. 2275. Verbal sale of immovables
Art. 2275. Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold.
Art. 2276. Parol evidence relative to written instruments
Art. 2276. Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
Applying these statutory rules, a verbal sale of standing timber is null and void and parol evidence is not admissible to prove the sale. Terry v. Butler, 240 La. 398, 123 So.2d 865 (1960); Kennedy v. Perry Timber Company, 219 La. 264, 52 So.2d 847 (1951); Havard v. Luttrell, 68 So.2d 798 (La.App. 2nd Cir. 1953).
Accordingly, the sale herein was null and void and the defendant is liable in damages for the unlawful cutting of plaintiff's timber.
The measure of damages for such unlawful cutting is well settled in our jurisprudence. As pointed out in Kennedy v. Perry Timber Company, supra: 
". . . If the trespass has been reckless and willfull, the trespasser is said to be guilty of moral bad faith and is liable *808 for the converted value of the timber without allowance or deduction for costs and expenses. In cases where the trespasser believes himself to be owner but should have known otherwise, either from information available to him or other ascertainable facts which would have placed a reasonably prudent man on notice, he is held to be in legal bad faith and the actual expenses incurred by him in converting the timber are to be deducted in assessing the damages. And in cases where the trespasser is in good faith, that is, where he believes that the timber belongs to him and there is no valid reason for him to suppose otherwise, he is liable only for its stumpage value. Bolles Wooden Ware Co. v. U.S., 106 U.S. 432, 1 S.Ct. 398, 27 L.Ed. 230; Guarantee Trust & Safe Deposit Co. v. E. C. Drew Inv. Co. et al., supra (107 La. 251, 31 So. 736); St. Paul v. Louisiana Cypress Lumber Co., 116 La. 585, 40 So. 906; State v. F. B. Williams Cypress Co., 131 La. 62, 58 So. 1033 and State v. Jefferson Island Salt Mining Co., 183 La. 304, 163 So. 145 and authorities there cited."
The introduction of parol evidence has been allowed upon the question of good or bad faith in determining the damages to be assessed in such cases. Timmons v. Lakeside Lumber Company, 68 So.2d 796 (La.App. 2nd Cir. 1953); Harvard v. Luttrell, supra.
Herein the trial judge concluded that defendant's version of the facts is actually what took place and was the true understanding between the parties. He further held that the defendant had the complete and full authority to cut the timber and was in good faith when he negotiated the sale with Mrs. Conques and later cut the timber and sold it to Hunt Lumber Company. Accordingly, the judge determined that the damages plaintiffs were entitled to would be the "stumpage value" of the timber, which he ascertained to be $55.00 per thousand feet, i.e. the amount defendant had already paid to Mrs. Conques by check, the latter never being returned. He further concluded no evidence was introduced to support the claim for mental pain and anguish, etc., and that the alleged loss of the natural beauty of the land was negated by Mrs. Conques' own testimony that one of the reasons for cutting the timber was to make the area into pastureland.
Conclusions of the trial court based on matters of fact, particularly when an evaluation of the credibility of witnesses is involved, will not be overturned except on a showing of manifest error. Insofar as the trial judge's factual conclusions herein, we find no manifest error. Smith v. Ranger Ins. Co., 301 So.2d 673 (La.App. 3rd Cir. 1974); Police Jury, Parish of Catahoula v. Briggs, 291 So.2d 472 (La.App. 3rd Cir. 1974).
We likewise find no error in the district judge allowing the introduction of parol evidence to show the defendant's good or bad faith, by following the rule enunciated in Timmons v. Lakeside Lumber Co., supra, and Havard v. Luttrell, supra. The jurisprudence has set down the requirement that the trial court look to the trespasser's good or bad faith in determining the damages to be awarded in this type of case. This in itself necessitates the use of parol evidence to make a determination thereof.
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiffs-appellants' costs.
Affirmed.